**09 CV 8663**

**LAW OFFICES OF RAHUL WANCHOO** (RW-8725)
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com



RECEIVED
OCT 13 2009
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PACIFIC BULK SHIPPING (CAYMAN) LTD.,

                              Plaintiff,

              - against -

RSUSA, LLC
a/k/a REYNOLDS SHIPPING (US) LLC,

                              Defendant.

-------------------------------------------------------------------X

ECF CASE

09 CV _____ (      )

**VERIFIED COMPLAINT**

Plaintiff, Pacific Bulk Shipping (Cayman) Ltd., ("Plaintiff"), by its attorney, LAW
OFFICES OF RAHUL WANCHOO, alleges on information and belief as follows:

### JURISDICTION AND VENUE

1.      This is a case of admiralty and maritime jurisdiction within the meaning of Rule
9(h) of the Federal Rules of Civil Procedure, and within the admiralty and maritime jurisdiction
of the United States and of this Honorable Court. This case also falls under the Court's
admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Finally, this Court also has
jurisdiction over this matter because the action also arises under the convention on the

1

Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et. seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et. seq.*

2.     At all material times, Plaintiff was and now is a foreign corporation organized and existing under and by virtue of the laws of a foreign country, and is the disponent owner of M.V.SUN HARVEST (the "Vessel"), a bulk carrier of about 64,714 deadweight tons capacity engaged in the carriage of bulk cargo by water.

3.     Upon information and belief, at all material times, Defendant, RSUSA, LLC ("Defendant") was and now is a foreign corporation organized and existing under and by virtue of the laws of Texas, U.S.A, and is the charterer of the Vessel.

## FACTS GIVING RISE TO CLAIM

4.     On or about September 12, 2009, a time charter party (the "Charter") was made between Plaintiff, as disponent owner of the Vessel, and Defendant as charterer, whereby Defendant chartered the Vessel for the carriage of harmless iron ore in bulk for a one time charter trip via safe ports, safe berths from West Coast of Mexico to China.

5.     The Charter provided that Defendant shall pay for the use and hire of the Vessel at the rate of $12,500.00 per day payable every 15 day in advance.  The Charter further provided that the first hire payment plus value of the bunker on delivery shall be payable within three banking days after the Vessel's delivery.

6.     The Charter also provided that ". . .failing the punctual and regular payment of the hire, or bank guarantee, or any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Charterers, without prejudice to any claim they (the

2

Owners) may otherwise have on the Charterers." A true and correct copy of the Charter (Fixture Recap along with Printed Form and Rider Clauses) is annexed hereto as **Exhibit 1.**

7.      On or about September 12, 2009 the Vessel was delivered to the Defendant at Changjiangkou, China, and the first hire payment was due on September 15, 2009. The second hire payment was due on or about September 25. Despite various reminders Defendant has failed and/or neglected to pay the hire amount in breach of its obligations under the Charter.

8.      On or about September 30, Plaintiff advised the Defendant that it is exercising its rights under the terms of the Charter to withdraw the Vessel for Defendant's non-payment and/or repudiatory breach of the Charter. A true and correct copy of the Plaintiff's Notice of Withdrawal dated September 30, 2009 is annexed hereto as **Exhibit 2.**

9.      By reasons of the premises, Plaintiff has sustained damages in the amount of $458,700.91 as best as can presently be calculated. A true and correct copy of Plaintiff's Damage Statement is annexed hereto as **Exhibit 3.**

10.     The Charter also provided in that, if any dispute arises between the parties, the matter in dispute shall be referred to arbitration in London with English law.  Plaintiff will commence arbitration in London against the Defendants shortly. In addition to its principal claim, Plaintiff is also entitled, in London, to attorneys' fees and other taxable costs incurred or likely to be incurred in bringing this claim, which as best as can presently be calculated, are $100,000.00. (See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees").

3

11.    Arbitration of these disputes in London may take at least 2 years.  Plaintiff is entitled to and would receive interest at the present rate of 7.5% compounded quarterly from October 2009 to the completion of the arbitration or about $73,493.83.

12.    Plaintiff's total claim against Defendant for which it seeks security herein is $632,194.74 ($458,700.91+ $100,000 + $73,493.83).

13.    All and singular the premises are true and within the admiralty and maritime jurisdiction of this Honorable Court.

14.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

15.    Our research shows that Defendant is one of the world's premier logistic and transportation company.  It also provides complete service for heavy lift projects such as relocation of power plant, refinery and also charters sea-going vessels. A true and correct extract of Defendant's profile obtained from its website is annexed hereto as **Exhibit 4.**  Defendant's commercial activities spanning the international markets are likely to entail  transactions in United States currency and the use of electronic funds transfers passing through New York intermediary banks to effect or receive payments in that currency. Furthermore, in the present Charter, the hire payments to the Plaintiff are to be made in US Dollars, which payments are cleared through intermediary banks in New York. Accordingly, the Defendant has, or will have during the pendency of this action, tangible or intangible property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Barclay's Bank, BNP Paribas, Citibank, Deutsche Bank

4

Trust Co. Americas, HSBC Bank USA, JP Morgan Chase Bank, Standard Chartered Bank, UBS

AG, and Wachovia Bank which is due and owing to the Plaintiff.

16.    Plaintiff seeks an order from this court directing the Clerk of Court to issue

Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules

for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration

Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia,* any property of the Defendant held by the

aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to

secure the Plaintiff's claim as described above.

**WHEREFORE,** the Plaintiff prays the following:

A.    That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all the matters alleged in the Verified Complaint.

B.    That since the Defendant cannot be found within this District, this Court issue an

Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and

also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or

intangible property in whatever form or any other funds held by the aforesaid garnishees,

including, Bank of America, Bank of New York, Barclay's Bank, BNP Paribas, Citibank,

Deutsche Bank Trust Co. Americas, HSBC Bank USA, JP Morgan Chase Bank, Standard

Chartered Bank, UBS Bank, and Wachovia Bank, which is due and owing to the Plaintiff, in the

amount of $632,194.74 to secure the Plaintiff's claims, and that all persons claiming any interest

in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the

matters alleged in the Verified Complaint.

5

C.    That this Court recognize and confirm any arbitration award or judgment rendered on Plaintiff's claims herein as a Judgment of this Court.

D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

E.    That this Court grant to Plaintiff such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
      October 13, 2009

                        **LAW OFFICES OF RAHUL WANCHOO**
                        Attorneys for Plaintiff
                        PACIFIC BULK SHIPPING (CAYMAN) LTD.

                By: _____
                      Rahul Wanchoo (RW-8725)

## VERIFICATION

STATE OF NEW JERSEY)

                       ss.

COUNTY OF BERGEN   )

       I, Rahul Wanchoo, being duly sworn, deposes and says:

1. I am an attorney at law and a member of the firm of Law Offices of Rahul Wanchoo, attorneys for Plaintiff.

2. I have read the foregoing Verified Complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief.

3. I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its underwriters and attorneys. The reason that this verification is made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

                                   _Rahul Wanchoo_

Sworn to and subscribed to
before me this 13th day of October, 2009.

_____
Notary Public

HICKSON P. KORE
ID # 2377209
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 8/26/2013

# EXHIBIT 1

## Law Offices of Rahul Wanchoo

| | |
|---|---|
| **From:** | "GREAT WALL - PETER" <peter@gwshipping.cc> |
| **To:** | <Undisclosed-Recipient:;> |
| **Cc:** | "GREAT WALL ALL" <broking@gwshipping.cc> |
| **Sent:** | Saturday, September 12, 2009 1:06 PM |
| **Attach:** | PRINTING FORM.doc; RIDER CLAUSE.doc |
| **Subject:** | MV.SUN HARVEST/RSUSA - CLEAN RECAP |

=
-------------------------------------------=---------------------------
        GREAT WALL INTERNATIONAL SHIPPING LTD.=BEIJING}
   Room 902, Block No.9, Zhuyujiayuan, No.9 Shouti South Road,
               Be=jing, China, P.C.100048
   TEL: 86-10-6879 0370/1/2/3/4/5   EXT 802   FAX: 86-10-6=790379
         E-MAIL: BROKING@GWSHIPPING.CC {PREFERED}
-----------------------------------------------------------------

TO: PACIFIC BULK &=bsp;            &nbs=;  SHENZHEN        /
MR.CHANG  =        &n=sp;
TO: RSUSA  C/= STEAMSHIP        PIRABUS &nb=p;    /
MR.GEORGE    =nbsp;      FM: GREATWALL &nbs=;        &=bsp;
BEIJING      &n=sp;/ MS.KUNDA & MR.PETER    =

RE: SUN HA=VEST/RSUSA- CLEAN RECAP
------------------------------------=--------------

(CPDD 12TH SEP 200=, BEIJING TIME )

PLSD TO RECAP MAIN TERMS AGREED BETW=EN CHTRS AND OWRS:-

=======3D=========================3D==================3D=========
ALL NEGOTIATIONS / FIXTURE IF ANY TO REMAIN PRIVATE AND CONFIDENTI=L
AND ANY DETAILS NOT TO BE REVE=LED TO ANY THIRD PARTIES
==================3D==========3D=====================
=

*** PERFORMING VSL ***

  MV SUN HARVEST
SD ST BC, PANAMA FLAG, BLT 1982
CLASS NK
DWAT 64,714MT ON ABT 12.768M SSW
LOA/BM 227.65/32.2M
GRT/NRT 37,582/19,753MT {PANAMA GRT/NRT 38,908.05/30,163.25MT}
7 HO/7 HA, GLESS
HATCH SIZE: NO.1/16.0 X 12.8, NO.2/18.1 X 12.8, NO.3/18.7 X 12.8, NO.4/12.0=X
12.8, NO.5-7/18.7 X 12.8 M
GRAIN CAPA 75,544.5 CBM
B/DOWN:
NO.1    323,203
NO.2    402,291
NO.3    414,372
NO.4    300,513
NO.5    412,500
NO.6    415,636

NO.7   399,338
---------------
TOTAL  2,667,852 CBFT
DEAD WEIGHT ON PASSING PANAMA CANAL ABOUT 57,200MT SUBJ TO TRIMMING (BSS 39=06"
FW)
HATCH TYPE: SIDE ROLLING
CONSTANT ABOUT 350MT EXCL FW, TPC ON FULL LADEN 65.2MT
SPEED 13.5 BALLAST/13.0 LADEN KNOTS ON ABOUT 33.5MT IFO180CST PLUS 1.5MT MG= AT
SEA (BASIS GOOD
WEATHER CONDITION, WINDS MAX BEAUPORT FORCE 4 AND/OR DOUGLAS SEA STATE 3) PORT
CONSUMPTION ABOUT 2.2MT MGO DAILY + 1.0 MT MGO DURING THE PERIOD O=
WARMING UP ENGINE
DURING WINTER SEASON
ALL DETAILS ABOUT


FULL STYLE OF HEADOWNERS INCL ADDRESS/TEL/FAX/TLX NO AND THE =AMES OF
PERSON/S IN CHARGE



HEADOWNERS
QING NING MARITIME S.A.

OPPRETOR
QING DAO HUIQUANSHIPPING COMPANY
FAX:0532-82897156
TLE:0532-82997135
QINGDAO QIXIA ROAD 4#,CHINA.

-ALL OTHER SHIPS OWNED/MANAGED BY THE HEADOWNERS

WILL BE UNDER FULL PANDI COVERAGE DURING THE CURRENCY OF THE CHARTER PARTY.=o:p>

&nb=p;P&a=p;1 CLUB: SKULD, OWNRS CONFIRM P&I COVERAGE

-IF THE SHIP IS ON =IME CHARTER TO A THIRD PARTY THEN THE FULL STYLE OF
TC CHRTRS/DISPONENT OWNERS SHOULD BE ADVISED INCLUDING ALL OTHER SHIPS
UNDER THEIR TIME CHARTER.

DISPONENT OWNERS:PACIFIC BULK SHIPPING (CAYMAN) LTD.


DECLARE IN WRITING TO STEAMSHIPS THAT THERE ARE NO OUTSTANDING HIRES/CLAIMS=DUE TO
HEADOWNERS ARISING FROM THE CHARTER PARTY BETWEEN HEADOWNERS AND DI=PONENT
OWNERS AND HEADOWNERS WILL NOT
EXERCISE LIEN ON CGO DUE TO UNPAID HIRES OF THE TIME CHARTERERS TO THE
HEAD=WNERS. <=o:p>

CONFIRM

-PANDI CLUB OF TIME CHARTERERS(IF ANY)

THE CHARTERERS P & I CLUB

CONFIRM

 DOC NO: BJ058072
 SMC NO: BJ068574

-HEADOWNERS CONFIRM TO STEAMSHIPS DIRECTLY AT <u>chartering@steamships.gr</u>
THAT THERE ARE =O OUTSTANDING HIRES/CLAIMS ARISING FROM THE CHARTER
PARTY BETWEEN HEAD OWNERS AND DISPONENT OWNERS AND THAT HEAD OWNERS WILL NO=
EXERCISE
LIEN ON CARGO DUE TO UNPAID HIRES OF THE TIME CHARTERERS TO THE HEAD OWNERS=/span>


-THE CHRS LIABILITY FOR DETENTION OR LOSS=OF USE OF THE VSL FOLLOWING
AND CONSEQUENT UPON AN INCIDENT WHICH MIGHT LEAD TO PHYSICAL LOSS OR DAMAGE=TO
THE VSL FOR WHICH THE
CHRS ARE LEGALLY LIABLE UNDER THE TERMS OF THIS CP,SHALL BE CAPPED AT THE D=ILY HIRE
OR PRO RATA
UNDER THIS CHARTER PARTY WHEN THE CASUALTY OCCURRED.
UNDER NO CIRCUMSTANCES WILL THE CHRS BE LIABLE FOR ANY GREATER AMOUNT

<=:p>CONFIRM


-PLS ADVISE IN THE FOL FOR=AT:


OWNERS NAME AND FULL STYLE=TOGETHER WITH TEL/FAX NUMBERS: AS PER ABOVE
DISPONENT OWNER: AS PER ABOVE
CARRIERS NAME : MV SUN HARVEST
MASTER's NAME: CAPT/ LI YONGJU
MANAGERS NAME: QINGDAO HUIQUAN SHIPPING =O.

| | |
|---|---|
| Beneficiary's Bank: | HSBC, Hong Kong |
| Bank Address: G/F 35 Bonham Strand, Sh=ung Wan, Hong Kong | |
| Swift Code: | HSBCHKHHHKH |
| Beneficiary: | Pacific Bulk Maritime Ho=dings Co., Ltd. |
| Beneficiary's A/C No.: | 459-254389-838 |

&nbs=;

FOR

-CHTRS: RSUSA, LLC   =OUSTON,TEXAS   Main: 832.425.2223

-OWRS:  PACIFIC BULK SHIPPING (CAYMAN) LTD

-DELY DLOSP JIANGYIN/PR.CHINA ATDNSHINC

-LAYCAN: 1200HOURS 12TH - 2359HOURS 18TH SEP 2009 LOCAL TIME.

-1 T/C TRIP ALWAYS VIA SPS/SBS/SAS AA AWIWL WITH LAWFUL/HARMLESS IRON ORE I= BULK
VIA WEST COAST OF MEXICO TO CHINA.

-REDLY DLOSP 1SP CHINA ATDNSHINC

-HIRE: USD 12,500 - PD INCLOT - HIRE PAYABLE EVERY 15 DAYS IN ADVANCE.

-1ST HIRE + VALUE OF BOD TO BE PAID W/I 3 BANKING DAYS AFTER VSL DELY. =font
face="Palatino Linotype"> CHARTERERS ARE ENTITILED TO DEDUCT FROM LAST
   SUFFICIENT HIRE PA=MENTS EST OWNERS DISBURSEMENTS BUT MAX USD 500 EACH PORT

-CVE: USD 1500 PER 30 DAYS PR.

-ILOHC£»USD 4,500

-BOD ABT 930 MT IFO / ABT 170 MT MGO.
 BUNKER PRICE FOR IFO TO BE USD 410 PMT AND MDO PRICE USD 550 PMT BOTH=ENDS.

-CHRTS WILL STEM BUNKERS AT CONVENIENT PLACES TO REDELIVER THE VESSEL<=r>  WITH
SAME QUANTITIES AS ON DELIVERY.

-HOLD CLEANINESS: VESSELS HOLDS ON ARRIVAL LOADING PORT TO BE CLEAN
 SWEPT/WASHED DOWN BY FRESH WATER AND DRIED UP SO AS TO RECEIVE CHARTE=ERS
 INTENDED CARGOS IN ALL RESPECTS,FREE OF SALT, RUST SCALE AND PREVIOUS=br>  CARGO
RESIDUE TO THE SATISFACTION
 OF THE ON-HIRE SURVEYOR.IF VESSEL FAILS TO PASS ANY HOLD INSPECTION, =HE
 VSL SHUD BE PLACED OFF-HIRE
 FROM TIME OF REJECTION UNTIL THE VESSEL PASSES THE SAME INSPECTION.  ANY
EXPENSE/TIME INCURRED THEREBY FOR OWNERS ACCOUNT

-OWNERS WARRANT THAT VESSELS HOLDS ARE CLEAR OF ANY
 FITTINGS/SUPERSTRUCTURES SUCH AS CARDECK CURTAIN PLATES WHATSOEVER -LOI:OWNERS TO
ALLOW CHARTERERS TO DISCHARGE CARGO WITHOUT PRESENTATION
 OF ORIGINAL BILL(S)/LADING BY PROVIDING WITH LETTER OF INDEMNITY IN A=CORDANCE
WITH OWNERS P N I
 CLUB FORM AND WORDING BEFORE DISCHARGING.LETTER OF INDEMITY TB SIGNED=BY
CHARTERERS ONLY.FAX
 TRANSMISSION / COPY ACCEPTABLE

-BIMCO ISM/ISPS CLAUSE TO BE APPLIED

-FOR THE PURPOSE OF COMPUTING HIRE PAYMENTS, THE TIME FOR
 DELIVERY/REDELIVERY SHALL BE ADJUSTED TO G.M.T

-2.5% ADDRESS COMM + 1.25% TO GREAT WALL + 1.25% TO STEAMSHIP =/div>


OTHERWISE AS PER OWRS BTB CP WITH =OGICAL AMENDMENTS AND BELOW ALTERATION:

RIDERS:
CL 37 DEL (DIRECT CONTINUATION)
CL 39 VSL'S DESC:PLS AMEND PNI CLUB COVER VALIDITY DATE ( 20/FEB/2009)
CL 46 DEL 2 INSERT 3 BANKING DAYS
CL 56 DEL AS NON-APPLICABLE
CL 60 L 3 DEL 'BUT LATEST AND INSERT 'PRIOR TO'
CL 70 1 1 DEL ¡®CHARTERERS MAY SUPPLY OCEAN ROUTES TO ADVISE THE MASTER=DURING
VOYAGES
SPECIFIED AND PAID BY CHARTERERS AGAINST WNI OCEAN ROUTES REPORT¡‾ ?AD.¡‾AND
REPLACE WITH : ¡®CHARTERERS MAY
ASSIGN THE VESSEL / APPOINT OCEAN ROUTES OR OTHER EQUIVALENT SHIP MONITORIN=
SERVICE TO TRACK THE VESSEL
WHICH WILL BE PAID BY CHARTERERS, LINE 9 DELETE¡®OCEAN ROUTES REPORTS T= BE TAKEN
INTO CONSIDERATION FOR THE PURPOSE OF DETERMINING THE WEATHER EN=OUNTERED¡‾ WITH
¡®OCEAN ROUTES OR OTHER SIMILAR MONITORING SE=VICE REPORT TO BE TAKEN AS RULING AND
PREVAILING¡‾ .


END

BELIVE ALL ABV IN ACCORDANCE WITH THE NEGO BTWN=OWRS N CHTRS.
PLS CONFM BY RETURN. THANK U FOR UR KINDLY SUPPORT.


MANY THANKS AND BEST REGARDS, =

PETER JI
=
TEL:   86-10-6879 0372/3 EXT 802=br>  DIR:   86-10-6879 0553
FAX:   86-10-6879 0379
MOB:   86- 15120082698
MSN:   PETER_GWS@HOTMAIL.COM
EMAIL:BROKING@GWSHIPPING.CC

# Time Charter

GOVERNMENT FORM

Approved by the New York Produce Exchange

November 6th, 1913—Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1   This Charter Party, made and concluded in **Beijing**                                    *15ᵗʰ day of June, 19 2006*

2   Between        *as disponents*

3   Owners of the good        Steamship/Motorship  ' *Sun Harvest* '                          ———— *See Clause No.39*        of.

4   of                                              tons gross register, and                                            indicated horse power

5   and with hull, machinery and equipment in a thoroughly efficient state, and classed

6   at                                              of about                                            cubic feet bale capacity, and about        tons of 2240 lbs.

7   deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,

8   allowing a minimum of fifty tons) on a draft of        feet        inches on        summer freeboard, inclusive of permanent bunkers,

9   which are of the capacity of about                              tons of fuel, and capable of steaming, fully laden, under good weather

10  conditions about                              knots on a consumption of about        tons of best Welsh coal—best grade fuel oil—best grade Diesel oil,

11  now *Trading*,

12      and                *Pacific Bulk Shipping Ltd.*                                      as        Charterers of the City of    *Bahamas*

13      Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14  About    *Time Charter period (about means 15 days more or less in Charterers' option)    for worldwide trading via safe*

15  *anchorage(s), safe berth(s), safe port(s), always afloat, always within I.W.L., N.A.A.B.S.A allow in Brazil and Argentina only*    within below

16  mentioned trading limits

16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17  the fulfillment of this Charter Party.        *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*

18  Vessel to be placed at the disposal of the Charterers, at

19

20  ~~in such dock or at such wharf or place (where she may safely lie always afloat, at all times of tide, except as otherwise provided in clause No.6), as~~

21  ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No.5. Vessel on her delivery to be~~

22  ~~ready~~ to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23  ~~donkey-boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same~~

24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

- 1 -

25   disc, including petroleum or its products, in proper containers, excluding      *See Clause No.33*

26   (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,

27   ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North~~

28   ~~America, and/or United States of America and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

29   ~~Mexico, and/or South America~~      *safe port(s), safe berth(s) and safe anchorage(s)*   ―― *See Clause No.63*      ~~and/or Europe~~

30   ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding ―― Magdalena River, St. Lawrence between~~

31   ~~October 21st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, Black Sea and the Baltic.~~

32

33

34

35   as the Charterers or their Agents shall direct, on the following conditions:

36   1. That the Owners shall provide and pay for all provisions, wages *galley fuel lubricants, vessel's garbage removal* and consular shipping and

37   discharging fees of the Crew, *fixes by authorities on crew and/or vessel unless caused by neglect or default on part of Charterers or their*

    *agents* shall pay for the

38   insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including *fresh and* boiler water and maintain her class

    and keep

    the vessel in a thoroughly efficient state in hull, *cargo holds,* her class, *crew and trading certificates valid, Vessel to have all other certificates*

    *necessary to comply with current requirements at ports of call*

39   2. That *while on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *customary* Pilotages,

    *boatage on Charterers' business,* Agencies, Commissions,

40   Consular Charges (except those pertaining to the Crew flag), and all other usual expenses except those before stated, but when the vessel puts

    into

41   a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

    illness of the crew *or cargoes carried prior to delivery* to be for Owners account. Fumigations ordered because of cargoes carried or ports visited

42   while vessel is employed under this

43   charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

44   ~~of six months or more.~~    *See Clause No.43*

45   ~~Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but~~

46   ~~Owners to allow them the use of any ―― dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards~~

47   ~~for dunnage, they making good any damage thereto.~~

48   3. That the Charterers, at the port of re-delivery, and the Owners, at the port of delivery, shall take over and pay for all fuel remaining on

49   ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than~~    tons and not more than

50   ~~tons and to be re-delivered with not less than~~    tons and not more than    tons.    *See Clause No.32*

51    4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD per day or pro-rata including overtime*

52    ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53    stores, on    ~~summer freeboard, per Calendar Month,~~ commencing on and from the day of her re-delivery, as aforesaid, and at

54    and after the same rate for any part of a month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55    wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot one safe port within following range port in Charterers'*

         *option at any time day or night, Sundays and holidays included:*

56    A)    *Shaw/Passero range including UK/Ireland/Morocco or*

      B)    *Boston/Brownsville range or*

      C)    *Aden /Japen range (including mainland China, Taiwan, South Korea, Vietnam, Philippines, Indonesia, Malaysia and Thailand), if Persian*

            *Gulf then passing Muscat Outbound.*

            *Redelivery notice with redelivery area to be declared latest 30 days prior to redelivery* unless otherwise mutually agreed. Charterers are to give

57    Owners ~~not less than~~    14/10/7/5/3/2/1 days

58    notice of vessels with definite date and port of re-delivery.

            5. Payment of said hire to be made in ~~New-York~~ in cash, in United States Currency, *See Clause No.46 semi-monthly 15 days* in advance, and

59    for the last half-month *15 days* or

      part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60    due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61    hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62    terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~

63    ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64    ~~to have the privilege of using vessel at once, such time used to count as hire.~~

            Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject    *See Clause No.46*

66    to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67    of such advances.

68        6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place in *port or outside port (See Clause*

      *No.62)* that Charterers or their Agents may

69    direct, provided the vessel can safely lie always afloat at any time of tide, except ~~at such places where it is customary for similar size vessels to safely~~

      ~~lie aground.~~    *Except at such places in Brazil and Argentina where it is customary for similar size vessel to safely lie aground.*

70        7. That the whole reach of the Vessel's Hold, Decks and usual places of loading (not more than she can reasonably stow and carry), also

71    accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

72    tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow. Charterers~~

73    ~~paying Owners~~    ~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

74    ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risks and expense.~~

75

76  8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78  agency; and Charterers are to load, stow, and trim the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for
79  cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

80  9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82  10. That the Charterers shall have permission to appoint a supercargo, who shall accompany the vessel and see that voyages are prosecuted
83  with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
84  rate of *$10.00 $1.60* per day, Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their agents, to victual
       Tally
85  Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate *US$5.00* per meal, for all such victualling.

86  11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88  terers, their Agents or Supercargo, when required, with a true copy of daily Logs *abstract*, showing the course of the vessel and distance run and the
       con-
       sumption of fuel.    *Master to adhere strictly to Charterers' instructions, give E.T.A. and required N.O.R.*

89  12. That the Captain shall use diligence in caring for the ventilation of the cargo.

90  ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~

91

92

93  ~~on giving written notice thereof to the Owners or their Agents............days~~ *previous to the expiration of the first named term, or any declared option.*

94  ~~14. That if required by Charterers, time not to commence before~~                              *and should vessel*

95  ~~not have given written notice of readiness on or before                                    but not later than 4 p.m. Charterers or~~

96  ~~their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.~~

97  15. That in the event of the loss of time from deficiency *default and/or strike of crew or deficiency of and/or* of men or stores, fire,
98  breakdown or damages to hull, machinery or equipment,
99  grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
100  preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost, and if upon the voyage the speed be reduced by
101  defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
102  thereof, and all extra expenses shall be deducted from the hire.

103  16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
104  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
105  Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

       The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106  purpose of saving life and property.

General Aver-

107  17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to *arbitration as per Clause*
*No. 30.*   ~~three persons at New York,~~

108  ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~

109  ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~

110  18. That the Owners shall have a lien upon all cargoes, and all sub-freights *or sub-hires* for any amounts due under this Charter, including

111  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112  deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113  might have priority over the title and interest of the owners in the vessel.

114  19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115  Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

116  York-Antwerp Rules *1974 as amended 1990 in London English Law to apply* ~~1924, at such port or place in the United States as may be selected by~~

~~the carrier, and as to matters not provided for by these~~

117  ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~

118  United States money, *at the rate prevailing on the last day of discharge* ~~at the port of final discharge at the dates made and allowances for damage to cargo claimed in foreign currency shall be converted or~~

119  ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

120  bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

121  or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if

122  required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the

123  carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the

124  place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in

125  United States money.

126  ~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

127  ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the~~

128  ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129  ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

130  ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131  ~~ships belonged to strangers.~~

132  Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133  20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the

134  cost of replacing same, to be allowed by Owners.

135  ~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136 convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from
137 time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.
138
139
140 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons; also
141 providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for
142 same; otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel fastenings and for
143 night-work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.

*Owners also to provide free of expense to Charterers sufficient electrical lighting with the vessel's lights, light clusters to permit work at all hatches and as on board at the same time.* The

144 Charterers to have the use of any gear on board the vessel.
145 23. Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging;
146 steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,
147 deck-hands and donkeyman for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the officers of the
148 ports, or labor-unions, prevent crew from driving winches, shore-Windlasses to be paid by Charterers. In the event of a disabled winch or winches, or
149 insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned
150 thereby.
151 24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled" An Act relating to Navigation of Vessels,
153 etc." in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both
154 of which are to be included in all bills of lading issued hereunder: *General Clause Paramount, New Jason Clause, Both-to-Blame Collision Clause,*

*Convertime Clause as attached*

155
### U.S.A. Clause Paramount

156 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
157 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
158 any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
159 be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160
### Both-to-Blame Collision Clause

161 If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
162 Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
163 hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss
164 or liability represents loss of, or damage to, or any claim whatsoever of the owner of said goods, paid or payable by the other or non-
165 carrying ship or her owners to the owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her

166    ~~owners or part of their claim against the carrying ship or carrier.~~

167    ~~25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light ships have been or are about to be with-~~

168    ~~drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the~~

169    ~~port or to get out after having completed loading or discharging.~~

170    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

171    navigation of the vessel, *acts of pilots and tugboats* insurance, crew, and all other matters, same as when trading for their own account.

172    27. A commission of 2½ 1.25 per cent is payable by the Vessel and Owners to

173

174    on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175    28. An address commission of 2½ 3.75 per cent payable to *Charterers* on the hire earned and paid under this Charter.

*Rider Clause No.29-77 inclusive, as attached, to be considered fully incorporated in this Charter Party.*

OWNERS

CHARTERERS

Printed by Parry's.

Baltic Exchange Chambers, 2nd Floor, 28 St. Mary Axe, London, EC3

By permission of the NEW YORK PRODUCE EXCHANGE

-7-

*ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

CLAUSE 29    AGENCY

OWNERS APPOINT PROTECTIVE AGENT AT EACH PORT TO TAKE CARE OF ALL OWNERS' MATTERS. CHARTERERS ARE ENTITLED TO DEDUCT USD1,000.00 PER PORT OF CALLING FROM HIRE PAYMENTS AS OWNERS' ESTIMATED DISBURSEMENT WHICH SUPPORTED BY VOUCHERS IF OWNERS FAIL TO NOMINATED THEIR PROTECTIVE AGENT.

CLAUSE 30    ARBITRATION

ALL DISPUTES OR DIFFERENCES ARISING OUT OF THIS CONTRACT, WHICH CANNOT BE AMICABLY RESOLVED, SHALL BE REFERRED TO ARBITRATION IN LONDON AND ENGLISH LAW TO BE APPLIED. .

UNLESS THE PARTIES AGREE UPON A SOLE ARBITRATOR, ONE ARBITRATOR SHALL BE APPOINTED BY EACH PARTY, IN THE CASE OF AN ARBITRATION ON DOCUMENTS, IF THE TWO ARBITRATORS SO APPOINTED ARE IN AGREEMENT THEIR DECISION SHALL BE FINAL. IN ALL OTHER CASE THE ARBITRATORS SO APPOINTED SHALL APPOINT A THIRD ARBITRATOR AND THE REFERENCE SHALL BE TO THE THREE-MAN TRIBUNAL-THUS CONSTITUTED.

IF EITHER OF THE APPOINTED ARBITRATORS REFUSES TO ACT OR IS INCAPABLE OF ACTING, THE PARTY WHO APPOINTED HIM SHALL APPOINT A NEW ARBITRATOR IN HIS PLACE.

IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, WHETHER ORIGINALLY OR BY WAY OF SUBSTITUTION FOR TWO WEEKS AFTER THE OTHER PARTY, HAVING APPOINTED HIS ARBITRATOR, HAS (BY TELEX OR LETTER) CALLED UPON THE DEFAULTING PARTY TO MAKE THE APPOINTMENT, THE PRESIDENT FOR THE TIME BEING OF THE LONDON MARITIME ARBITRATORS ASSOCIATION SHALL UPON APPLICATION OF THE OTHER PARTY, APPOINT AN ARBITRATOR ON BEHALF OF THE DEFAULTING PARTY AND THAT ARBITRATOR SHALL HAVE THE LIKE POWERS TO ACT IN THE REFERENCE AND MAKE AN AWARD (AND, IF THE CASE SO REQUIRES, THE LIKE DUTY IN RELATION TO THE APPOINTMENT OF A THIRD ARBITRATOR) AS IF HE HAD BEEN APPOINTED IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT.

THIS CONTRACT IS GOVERNED BY ENGLISH LAW AND THERE SHALL APPLY TO ALL PROCEEDINGS UNDER THIS CLAUSE THE TERMS OF THE LONDON MARITIME ARBITRATORS ASSOCIATION CURRENT AT THE TIME WHEN THE ARBITRATION PROCEEDINGS WERE COMMENCED. ALL APPOINTEES SHALL BE MEMBERS OF THE ASSOCIATION.
(LMAA ARBITRATION CLAUSE)

WHERE THE AMOUNT INVOLVED IS LESS THAN USD25,000. THE DISPUTE OF DIFFERENCE SHALL BE REFERRED TO ARBITRATION ACCORDING TO THE L.M.A.A. SMALL CLAIMS PROCEDURE 1989.

CLAUSE 31    BOYCOTT

IN THE EVENT OF THE VESSEL BEING SUBJECTED TO BOYCOTT, LABOUR, BEING DELAYED OR RENDERED INOPERATIVE BY STRIKES, LABOUR STOPPAGES OR ANY OTHER DIFFICULTIES ARISING FROM VESSEL'S FLAG, OWNERSHIP, CREW OR TERMS OF EMPLOYMENT OF CREW OF CHARTERED VESSEL OR ANY OTHER VESSEL UNDER SAME OWNERSHIP, OPERATION OR CONTROL SUCH TIME LOST IS TO BE CONSIDERED AS OFF-HIRE. OWNERS GUARANTEE THAT ON DELIVERY THE MINIMUM TERMS AND CONDITIONS OF EMPLOYMENT OF THE CREW OF THE VESSEL WILL BE COVERED BY A CONTRACT ACCEPTABLE TO THE INTERNATIONAL TRANSPORT WORKERS FEDERATION, OR BY A BONA FIDE TRADE UNION AGREEMENT ACCEPTABLE TO THE INTERNATIONAL TRANSPORT WORKERS FEDERATION, AND WILL REMAIN SO DURING THE DURATION OF THE CHARTER PERIOD.

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST'  CHARTER PARTY*
*DATED 15ᵀᴴ JUNE 2006*

---

CLAUSE 32     BUNKERS

BUNKER ON DELIVERY ABOUT 1,100-1,300 MT IFO (180 CST) AND 120-150 MT MGO.

BUNKER ON REDELIVERY ABOUT SAME QUANTITY AS BUNKER ON DELIVERY.

BUNKER PRICE AT BOTH END TO BE USD330 PER METRIC TON FOR IFO AND USD530 PER METRIC TON FOR MGO.

OWNERS TO HAVE THE PRIVILEGE TO BUNKER THE VESSEL FOR THEIR OWN ACCOUNT PRIOR REDELIVERY, PROVIDED THIS DOES NOT INTERFERE WITH CHARTERERS' OPERATIONS.

SIMILARLY CHARTERERS HAVE THE PRIVILEGE TO BUNKER THE VESSEL FOR THEIR ACCOUNT PRIOR TO DELIVERY, PROVIDED THIS DOES NOT INTERFERE WITH OWNERS' OPERATIONS.

VESSEL TO BE SUPPLIED WITH BUNKERS NOT INFERIOR TO:
IFO-GRADE RME 25 IN ACCORDANCE WITH ISO 8217 DIS 1996

CLAUSE 33     CARGO-EXCLUSIONS

VESSEL CAN BE EMPLOYED IN CARRY LAWFUL MERCHANDISE CARGOES BUT EXCLUDING INJURIOUS, FLAMMABLE AND DANGEROUS GOODS, AND ALWAYS EXCLUDING CARGOES RESTRICTED BY AS FOLLOWS:

LIVESTOCK, EXPLOSIVES, RADIOACTIVE MATERIALS, ARMS AND WAR MATERIALS, AMMUNITION, LOGS OF ANY KIND, ASPHALT, PITCH, AMMONIUM NITRATE, CREOSOTED GOODS, HIDES, NAPHTHA, TAR AND ITS PRODUCTS, CHARCOAL, POND COAL, RESIN, SALT, MOTOR BLOCKS AND TUNINGS, BLACK POWDER, BLASTING CAPS, DETONATORS, LOADED BOMBS, DYNAMITES, TNT EXPLOSIVES, ASBESTOS, WASTES, HARMFUL AND CORROSIVE FERTILIZERS EXCEPT DAP, MANIOC PELLETS, SLUDGE ORE, FUELS, ACID, CALCIUM CARBIDE, BONES, SODA ASH IN BULK, FERRO SILICON, SHAVINGS FISHMEAL, BULK BORAX, CEMENT, COTTON, CAUSTIC SODA, ZINC, ASHES, SALTPETER, CALCIUM HYPOCHLORIDE, COPRA AND ITS PRODUCTS, PETROLEUM OF ITS PRODUCTS, WASTE PAPER, INDIAN COAL, SCRAP, SPONGE-IRON (DIRECT REDUCED IRON PELLETS), SUNFLOWER SEED EXPELLERS, OIL CAKES, RICE, HBI AND ANY CARGOES EMBARGOED BY THE U.N.

A.    STEEL PRODUCTS, STEEL SLABS AND BILLETS EXCLUDED. ALL THE CARGOES WHICH REQUIRE TO PROVIDE VESSEL'S SECURING MANUAL FOR LOADING AND STOWING ARE EXCLUDED.

B.    SUNFLOWER EXTRACTION PELLETS/PELLETS CLAUSE:
NOTWITHSTANDING THE CARGO EXCLUSIONS AS ABOVE, CHARTERERS HAVE LIBERTY TO CARRY SUNFLOWER EXTRACTION PELLETS/PELLETS, (WHETHER IT BE FULL OR PART CARGO), DURING THE ENTIRE CURRENCY OF THIS CHARTER ON FOLLOWING CONDITIONS:

SUNFLOWER SEED EXTRACTION PELLETS/ PELLETS CONTAINING NOT MORE THAN 1.5% OF OIL AND MORE THAN 11% OF MOISTURE AND BEING SUBSTANTIALLY FREE FROM FLAMMABLE SOLVENT ARE ALLOWED, BUT CHARTERERS TO ENDEAVOUR TO OBTAIN A CERTIFICATE FROM A PERSON RECOGNIZED BY THE COMPETENT AUTHORITY OF THE COUNTRY OF SHIPMENT PRIOR TO LOADING. CHARTERERS TO PROVIDE THE EQUIPMENT FOR CARGO SUPERVISION LIKE REGULAR TEMPERATURE READINGS IF MASTER REQUESTS SAME.

C.    CHARTERERS HAVE OPTION TO LOAD MAX TWO SHIPMENTS EACH OUT OF SULPHER OR

2

---

PETCOKE OR CEMENT OR AMMONIUM NITRATE FERTILIZER GRADE DURING WHOLE CHARTER PERIOD PROVIDED AND NOT CARRIED IN CONSECUTIVE SHIPMENTS/VOYAGES AND NOT THE LAST CARGO BEFORE REDELIVERY AGAINST OWNERS PROTECT CLAUSE. AND IF SULPHER OR PETCOKE OR CEMENT LOADED, THEN RELEVANT INTERMEDIATE HOLD CLEANING BONUS TO BE USD6,000.00.

I) **BULK CEMENT LOADING CLAUSE**

NOTWITHSTANDING THE CARGO EXCLUSIONS AS ABOVE, CHARTERERS HAVE LIBERTY TO CARRY CARGO OF BULK CEMENT, (WHETHER IT BE FULL OR PART CARGO), DURING THE ENTIRE CURRENCY OF THIS CHARTER ON FOLLOWING CONDITIONS:

(A)   CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL'S STABILITY TRIM AND STRESS PERMITTING;

(B)   SHOULD ANY ADDITIONAL/SPECIAL WASHDOWN OF HOLDS BEFORE LOADING BE REQUIRED/RECOMMENDED BY INDEPENDENT SURVEYORS APPOINTED BY CHARTERERS AT THEIR EXPENSE, SUCH WASHDOWN TO BE ARRANGED BY CHARTERERS AT THEIR EXPENSE;

(C)   CHARTERERS ARE NOT ALLOWED TO DRILL HOLES AND/OR MAKE ANY OPENING ON ANY HATCH COVERS FOR PURPOSES OF LOADING/STOWING/TRIMMING/DISCHARGING;

(D)   AFTER LOADING CHARTERERS UNDERTAKE TO ARRANGE AT THEIR EXPENSE ANY SPECIAL/EXTRA TRIMMING AND/OR LEVELLING OF CARGO TO MASTER'S SATISFACTION AND ALSO CHARTERERS TO GIVE REASONABLE TIME TO ALLOW FOR THE CARGO TO SETTLE AND ANY AIR TO EXCAPE BEFORE VESSEL'S DEPARTURE FROM LOADING BERTH/PORT;

(E)   SUCH CARGO NOT TO BE THE FIRST CARGO AFTER DELIVERY NOR THE LAST CARGO PRIOR TO REDELIVERY;

(F)   ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY AND ANY DETENTION THROUGH ANY OF ABOVE CAUSES TO BE FOR CHARTERERS' ACCOUNT;

THE LIBERTY GRANTED TO CHARTERERS HEREIN IS SUBJECT TO CHARTERERS' GUARANTEE THAT THE ABOVE-MENTIONED COMMODITIES WILL BE NOT CARRIED IN CONSECUTIVE SHIPMENTS/VOYAGES. OWNERS HAVE RIGHT TO WITHDRAW THE LIBERTY GRANTED TO CHARTERERS HEREIN IN CASE OF ANY BREACH OF ABOVE BY CHARTERERS.

IN THE EVENT OF LOADING CEMENT IN BULK, THE FOLLOWING CLAUSE TO APPLY. IT IS UNDERSTOOD AND AGREED THAT CHARTERERS HAVE THE OPTION TO CUT HOLES ON HATCH COVERS FOR LOADING BULK CEMENT ON THE FOLLOWING CONDITIONS:

a)   ALL  CUTTING  AND  RESTORING  OF  THE  HOLES  TO  BE  FULLY SUPERVISED/ATTENDED/APPROVED BY CLASSIFICATION SURVEYOR WITH WRITTEN DOCUMENTS.

b)   HOLES NOT TO BE CUT WITHIN THE SAME FRAME SPACE WITH THE EXISTING GRAIN

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

FEEDING HOLES AND TO BE CUT AT THE SUITABLE PLACE OF HATCHCOVER IN
ACCORDANCE WITH VESSEL'S BUILDER'S SPECIFICATION.

c) WELT PROTECTION TO BILGE WELL OF ALL HOLDS IS STRICTLY NECESSARY TO KEEP
SMOOTH SUCTION WHILE DISCHARGING HOLD WASHING WATER BY USING GUM TAPES
(PLASTER) OR SO.

d) WHEN RESTORING CEMENT HOLES, CHILL PLATES OR SIMILAR MATERIAL IF DEEMED
NECESSARY BY MASTER/SURVEYOR TO BE FITTED FOR COMPLETE WELDING IN ORDER
TO REINSTATE THE HATCHCOVERS BACK TO THEIR ORIGINAL CONDITION.

e) AFTER COMPLETION OF RESTORING OF HOLES, HOSE TEST TO BE CARRIED OUT IN
PRESENCE OF CLASSIFICATION SURVEYOR AND THE TEST RESULT SHOULD BE TO HIS
SATISFACTION. OTHERWISE THE CHARTERERS HAVE THE OBLIGATION TO RECTIFY THE
SITUATION UNTIL AND WHEN SATISFIED BY SURVEYORS.

f) CHARTERERS INDEMNIFY OWNERS OF ALL POSSIBLE CARGO SOLIDIFICATION DUE TO
HOLD SWEATING WHICH IS IMPOSSIBLE TO AVOID BY PROPER OPERATION OF EXISTING
NATURAL VENTILATION SYSTEM.

g) ALL TIME FOR PREPARING, CUTTING AND RESTORING UP TO CLASSIFICATION
SURVEYOR'S SATISFACTION AS WELL AS ALL EXPENSES INCLUDING CLASSIFICATION
SURVEYOR'S FEES AND EXPENSES SHALL BE FOR CHARTERERS' ACCOUNT.

2) **AMMONIUM NITRATE FERTILIZER GRADE LOADING CLAUSE:**
AMMONIUM NITRATE FERTILIZER GRADE WILL BE LOADED/TRIMMED/CARRIED/
DISCHARGED STRICTLY IN LINE WITH LATEST IMO REGULATIONS AND WITH ANY EXTRA
TIME/COST/EXPENSES TO BE FOR CHARTERERS' ACCOUNT.

3) **CHARTERERS HAVE OPTION TO LOAD CARGO OF PETCOKE UNDER FOLLOWING
TERMS/ CONDITIONS:**
A) THE PETROLEUM COKE MENTIONED HEREIN IS ONLY LIMITED TO PETROLEUM COKE OF
NON-OILY/NON-HAZARDOUS/NON-DANGEROUS GREEN DELAYED TYPE;

B) CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL'S
STABILITY TRIM AND STRESS PERMITTING;

C) SUCH CARGO TO BE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY ACCORDING TO
LATEST IMO AND/OR ANY OTHER LATEST REGULATIONS/RULES APPLICABLE TO SUCH
CARGO;

D) SHOULD ANY ADDITIONAL/SPECIAL WASHDOWN OF HOLDS BEFORE LOADING BE
RECOMMENDED/PROPOSED/REQUIRED BY MASTER, CHARTERERS UNDERTAKE TO
ARRANGE THE SAME AT THEIR EXPENSE/TIME;

E) CHARTERERS TO ARRANGE AND REMAIN RESPONSIBLE FOR CLEANING HOLDS AFTER
DISCHARGE TO MASTER'S SATISFACTION INCLUDING CHEMICAL CLEANING IF
NECESSARY, ALL COSTS TIME AND EXPENSES TO BE FOR CHARTERERS' ACCOUNT;

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

F) IF VESSEL SHOULD FAIL SUBSEQUENT SURVEY ALL TIME AND EXPENSES INVOLVED IN PASSING SURVEY TO BE FOR CHARTERERS' ACCOUNT;

G) IF SUBSEQUENTLY VESSEL HAS TO PAINT HOLDS AS A DIRECT RESULT OF CARRYING PETCOKE THEN TIME AND EXPENSES TO BE FOR CHARTERERS' ACCOUNT;

H) IF ANY DISPUTE ARISE BETWEEN CHARTERERS/MASTER, AN INDEPENDENT SURVEYOR SHOULD BE APPOINTED JOINTLY BY OWNERS/ CHARTERERS AND HIS DECISION SHOULD BE FINAL.

4)    SULPHUR ALLOWED LOADING UNDER FOLLOWS TERMS AND CONDITIONS:

A) CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE PROVIDED VESSEL'S STABILITY TRIM AND STRESS PERMITTING;

B) BEFORE LOADING, ALL HOLDS ASSIGNED FOR SULPHUR TO BE LIME-WASHED BY CHARTERERS' AT THEIR TIME/EXPENSES/RISK TO THE SATISFACTION OF MASTER AND INDEPENDENT SURVEYORS APPOINTED BY CHARTERERS AT THEIR TIME/EXPENSES;

C) SUCH CARGO TO BE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY ACCORDING TO LATEST IMO AND/OR ANY OTHER LATEST REGULATIONS/RULES APPLICABLE TO SUCH CARGO.

D) ALL FRESH WATER USED FOR IRRIGATION ONTO SULPHUR DURING LOADING/VOYAGE/ DISCHARGING TO BE FOR CHARTERERS' ACCOUNT;

E) AFTER DISCHARGE CHARTERERS TO SUPPLY SUFFICIENT FRESH WATER AT THEIR EXPENSE FOR WASHING DOWN OF ALL HOLDS;

F) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY (SUCH AS HOLD CLEANING TO MASTER'S SATISFACTION/ HOLD SURVEY ETC.) AND ANY DETENTION THROUGH ANY OF ABOVE CAUSES TO BE FOR CHARTERERS' ACCOUNT;

G) CHARTERERS ARE ALLOWED TO USE SHIP'S CREW TO PERFORM LIME-WASHING AND REMOVAL OF SAME AND RE-PAINTING AS NECESSARY BESIDES NORMAL INTERMEDIATE HOLD CLEANING, BUT ALWAYS SUBJECT TO PRIOR CONSENT OF MASTER/CREW AND LOCAL REGULATIONS PERMITTING, AND ALL TIME USED TO BE FOR CHARTERERS' ACCOUNT. ALL NECESSARY MATERIALS, TOOLS AND EQUIPMENTS REQUIRED TO BE SUPPLIED BY CHARTERERS IN ACCORDANCE WITH MASTER'S REQUIREMENT. OWNS/MASTER ARE NOT HELD RESPONSIBLE FOR PASSING HOLD CLEANLINESS FOR LOADING NEXT CARGO AND FOR ANY CONSEQUENCES WHATSOEVER CAUSED DUE TO SUCH ARRANGEMENT.

ANY GOODS OF A DANGEROUS, FLAMMABLE OR CORROSIVE NATURE SHALL BE CARRIED ONLY IF PERMITTED BY AND IN ACCORDANCE WITH THE REQUIREMENTS OR RECOMMENDATIONS OF I.M.O. AND/OR THE AUTHORITIES OF THE STATE OF THE VESSEL'S REGISTRY AND OF THE STATES OF PORTS OF SHIPMENT AND OF ANY INTERMEDIATE STATES OR PORTS THROUGH WHOSE WATERS THE VESSEL MUST PASS.

MEALS WILL BE LOADED STRICTLY ACCORDANCE WITH LATEST IMO REGULATIONS AND A VALID

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

CERTIFICATE ISSUED BY A COMPETENT/RECOGNIZED AUTHORITY WILL BE GIVEN TO THE MASTER,

**IRON ORE CONCENTRATE LOADING CLAUSE:**

VESSEL IS TO LOAD IRON ORE CONCENTRATE AT ALASKA, BC, USWC, AUSTRALIA, CHILE ONLY.

FOR LOADING CONCENTRATES THE STOWAGE TO BE WITHIN VESSEL'S STRENGTH. ALL NECESSARY SEPARATION IF REQUIRED TO BE PROPERLY ERECTED UP TO SURVEYOR'S AND MASTER'S SATISFACTION AT CHARTERERS' EXPENSE AND TIME AND CARGO TO BE LOADED, STOWED, SEPARATED, TRIMMED AND DISCHARGED ETC., ACCORDING TO LATEST IMO OR ITS' RECOMMENDATIONS, AND/OR THE AUTHORITIES OF THE STATE OF THE VESSEL'S REGISTRY AND/OR THE STATES OF THE VESSEL'S MANAGEMENT AND/OR THE STATES OF PORTS OF SHIPMENT AND OF ANY INTERMEDIATE STATES OR PORTS THROUGH WHOSE WATERS THE VESSEL MUST PASS, AT MASTER'S REQUEST, CHARTERERS TO ALLOW OWNERS TO APPOINT P AND I SURVEYOR OR INDEPENDENT SURVEYOR TO SUPERVISE LOADING, STOWING, EXECUTION OF SEPARATION, ETC., TO SURVEYOR'S AGREEMENT AND MASTER'S SATISFACTION AT CHARTERERS' TIME AND EXPENSES.

IF CHARTERERS' LOADING PART CARGO OF CONCENTRATES SAME TO LOADED IN ACCORDING WITH VESSEL'S PERMISSIBLE LONGITUDINAL STRENGTHS/STRESSES/MOMENTS AND UNDER MASTER'S SUPERVISION CHARTERERS TO SUPPLY VESSEL SHIPPERS CERTIFICATE OF TRANSPORTABLE MOISTURE LIMIT AND CARGO MOISTURE CONTENT EVIDENCING CARGO COMPLIANCE WITH LATEST IMO REGULATION. AFTER LOADING, CARGO MUST BE PROPERLY TRIMMED AT CHARTERERS' TIME AND EXPENSE TO SURVEYOR'S SATISFACTION.

IT IS UNDERSTOOD THAT LOADING TERMS FOR LOADING CONCENTRATES TO BE WEATHER WORKING DAYS. DURING LOADING, MASTER HAS THE RIGHT TO STOP LOADING AND CLOSE THE HATCHES IF RAINS AFFECT CONCENTRATES MOISTURE CONTENT. ANY SUCH STOPPAGE IS NOT CONSIDERED TO BE OFF-HIRE UNDER CONTENT.

CLAUSE 34    **CERTIFICATES**
THROUGHOUT THE PERIOD OF THE CHARTER PARTY, THE VESSEL TO BE IN POSSESSION OF ALL NECESSARY VALID EQUIPMENT AND CERTIFICATES TO COMPLY WITH THE SAFETY AND HEALTH REGULATIONS, NATIONAL AND INTERNATIONAL REGULATIONS, AND ALL CURRENT REQUIREMENTS AT ALL PORTS OF CALL, PANAMA AND SUEZ CANAL INCLUDED.

VESSEL IS CAPABLE OF LOADING GRAIN WITHOUT BAGGING/STRAPPING/SECURING OF ANY DESCRIPTION WHEN LOADED IN ACCORDANCE WITH THE PROVISIONS OF SOLAS 1974 (OR SUBSEQUENT AMENDMENTS) WHEN LOADED WITH FULL CARGO OF BULK GRAIN, MAXIMUM ONE GRADE PER HOLD WITH ONE SLACK HOLD.

OWNERS GUARANTEE THAT VESSEL HAS VALID JAPANESE SANITATION INSPECTION CERTIFICATE FOR RADIO PRATIQUE ON BOARD.

OWNERS GUARANTEE THAT VESSEL HOLDING VALID CERTIFICATE OF FINANCIAL RESPONSIBILITY AND INTERNATIONAL TONNAGE CERTIFICATE DURING THE ENTIRE CHARTER PARTY PERIOD.

OWNERS GUARANTEE THAT VESSEL IS IN ALL RESPECTS ELIGIBLE FOR TRADING TO THE PORTS, PLACES OR COUNTRIES SPECIFIED IN CHARTER PARTY AND THAT AT ALL NECESSARY TIMES THE

*ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

VESSEL AND/OR OWNERS SHALL HAVE VALID CERTIFICATES, RECORDS OR OTHER DOCUMENTS REQUIRED FOR SUCH TRADE,
VESSEL TO BE ITF FITTED.

ALL DOCUMENTS/CERTIFICATE TO BE VALID/KEPT ONBOARD BY OWNERS INCLUDING COMPLIANCE WITH ISM (INTERNATIONAL SAFETY MANAGEMENT) REGULATIONS CARRYING AN ACCREDITED SMS/ISM CERTIFICATE ISSUED BY INTERNATIONAL RECOGNIZED CLASSIFICATION SOCIETY.

FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM) CODE IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THE CHARTER PARTY, THE OWNERS SHALL PROCURE THAT THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISM CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE. UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF COMPLIANCE (DOC) AND SAFETY MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS. EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSES OR DELAY CAUSED BY THE FAILURE ON THE PART OF THE OWNERS OF "THE COMPANY" TO COMPLY WITH THE ISM CODE SHALL BE FOR THE OWNERS' ACCOUNT.

VESSEL/OWNERS MUST COMPLY WITH THE CONDITIONS ESTABLISHED BY THE BRAZILIAN PORT AUTHORITIES DECREE 6007/95 FOR VESSEL MORE THAN 18 YEARS OLD, OR ANY BRAZILIAN LAWS/ENACTMENTS REGARDING VESSELS, PORTS OR LOADING RESTRICTIONS. VESSEL MUST BE FIT IN EVERY RESPECT, PROPERLY AND DULY LICENSED AND APPROVED FOR THE CARRIAGE OF INTENDED CARGOES DURING ENTIRE CHARTER PERIOD.

CLAUSE 35     COMMUNICATIONS/REPRESENTATION

CHARTERERS ARE TO REIMBURSE OWNERS FOR COST OF ENTERTAINMENT/CABLES/VICTUALLING COMMUNICATIONS, ALSO REPRESENTATION EXPENSES INCURRED ON CHARTERERS BEHALF, BY PAYMENT OF A LUMPSUM OF USD   PER MONTH OR PRO RATA TO BE SETTLED TOGETHER WITH HIRE OVER CORRESPONDING PERIODS.

N.B. ABOVE COMMUNICATION/REPRESENTATION EXPENSES NOT TO BE CONFOUNDED WITH MEALS/SUPERINTENDENTS ETC. AS PER CLAUSE 10

CLAUSE 36     DELETED.

CLAUSE 37     HOLDS CONDITION (DIRECT CONTINUATION)

ON ARRIVAL 1ST LOAD PORT, VESSEL TO BE CLEAN AND READY IN EVERY RESPECT AND IN ALL COMPARTMENTS TO RECEIVE CHARTERERS' CARGO TO LOCAL SURVEYORS AND/OR COMPETENT AUTHORITIES' SATISFACTION FAILING WHICH VESSEL TO BE OFFHIRE AND OWNERS TO TAKE IMMEDIATE CORRECTIVE STEPS TO EXPEDITE CLEANING AS FAST AS POSSIBLE INCLUDING THE USE OF SHORE LABOUR. IF VESSEL FAILS INSPECTION ALL BUNKERS CONSUMED AND EXTRA DIRECTLY RELATED EXPENSES INCURRED TO BE FOR OWNERS' ACCOUNT UNTIL VESSEL HAS BEEN PASSED IN ALL COMPARTMENTS.

CLAUSE 38     DELIVERY-NOTICES

OWNERS TO KEEP CHARTERERS CLOSELY ADVISED OF EXPECTED DATE OF DELIVERY AND GIVE 14/10/7/5/3/2/1 DAYS NOTICE THEREOF.

## ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY
### DATED 15TH JUNE 2006

CLAUSE 39    DESCRIPTION

MV SUN HARVEST

SD ST BC, PANAMA FLAG, BLT 1982

CLASS NK

DWAT 64,714MT ON ABT 12.768M SSW

LOA/BM 227.65/32.2M

GRT/NRT 37,582/19,753MT (PANAMA GRT/NRT 38,908.05/30,163.25MT)

7 HO/7 HA, GLESS

HATCH SIZE: NO.1/16.0 X 12.8, NO.2/18.1 X 12.8, NO.3/18.7 X 12.8, NO.4/12.0 X

12.8, NO.5-7/18.7 X 12.8 M

GRAIN CAPA 75,544.5 CBM

| B/DOWN: | NO.1 | 323,203 |
|---|---|---|
| | NO.2 | 402,291 |
| | NO.3 | 414,372 |
| | NO.4 | 300,513 |
| | NO.5 | 412,500 |
| | NO.6 | 415,636 |
| | NO.7 | 399,338 |
| | TOTAL | 2,667,852 CBFT |

DEAD WEIGHT ON PASSING PANAMA CANAL ABOUT 57,200MT SUBJ TO TRIMMING (BSS 39'06" FW)

HATCH TYPE: SIDE ROLLING

CONSTANT ABOUT 350MT EXCL FW, TPC ON FULL LADEN 65.2MT

SPEED 13.5 BALLAST/13.0 LADEN KNOTS ON ABOUT 34MT IFO180CST PLUS 1.0MT MGO AT SEA (BASIS

GOOD WEATHER CONDITION, WINDS MAX BEAUFORT FORCE 4 AND/OR DOUGLAS SEA STATE 3)

PORT CONSUMPTION ABOUT 2.2MT MGO DAILY + 1.0 MT MGO DURING THE PERIOD OF WARMING UP

ENGINE DURING WINTER SEASON

ALL DETAILS ABOUT

OWNERS REPLY TO CHARTERERS' QUESTIONNAIRES AS FOLLOWS:

01 - NAME OF VESSEL: **MV SUN HARVEST**

    - TYPE: **BULK CARRIER**

    - FLAG: **PANAMA**

    - OFFICIAL NUMBER: **20959-PEXT-2**

    - LLOYDS NUMBER:

    - ISM NUMBER FOR OWNERS: **IMO NO.8103951**

    - VESSEL'S SMC/DOC NUMBER: **QD068503 / BJ058072**

02 - PREVIOUS NAME (S): **SEORAX**

    - SINCE WHEN VESSEL IS UNDER PRESENT NAME AND OWNERSHIP/MANAGEMENT:

    **9TH Nov. 1998**

    - CALL SIGN: **3EZ18**

    - SATCOM/TELEX/FAX: **435581410/ M763684066/ A1570671**

03 – BUILT YEAR/MONTH: **21 JUNE, 1982**

    - YARD: **Hashihama, Japan**

    - MAKERS/MODEL/HORSEPOWER OF MAIN ENGINE

8

*ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

Built place: Hashihama Japan

Maine engine:  B&W 6L67CA

Horse power(MCR):13100BHP/123RPM

04 – WINTER/SUMMER DWT AND ITS DRAFT

| Load line | Free board(M) | Draft(M) | Dead weight(MT) |
|-----------|---------------|----------|-----------------|
| Summer    | 5.592         | 12.768   | 64714           |
| Winter    | 5.857         | 12.503   | 62987           |

- TPC/TPI: 65.3 / 165.9mt

- CONSTANTS INCL/EXCL FW: about 350MT

05 – GT: 37582

- NT: 19753

- SERVICE SPEED ON LADEN/BALLAST CONDITION:

13.5 ballast/ 13.0 laden knots (basing on good weather condition, winds max Beanfort force 4 and Douglas sea state3)

06 – LOA: 227.65 M

- BEAM: 32.20 M

- CFT GRAIN (TOTAL/HOLDWISE): 2,667,852

07 – HEIGHT WATERLINE TO TOP OF HATCHCOVER UNDER OPEN CONDITION

AT H1/3/5/7 WHEN LOADED/LIGHT BALLAST/HEAVY BALLAST:

1. In heavy ballast:   H1/H7   14.69/13.38m

2. In light ballast:   H1/H7   16.86/14.20m

- PLEASE SPECIFY WHICH HOLDS REQUESTED TO BE FLOODED AND BALLAST PUMP

CAPACITY IN MT/HR 1500m3/h

08 – NO. OF HOLDS: 7HO

- NO. OF HATCHES: 7HA

- HATCHCOVER TYPE: Hydraulic side-sliding

- CENTERBOOMS : NO

- NUMBER OF GEAR/GRAB AND ITS CAPACITY (WT/CBM): GEARLESS

- MAX OUTREACH OF GEAR WITH ITS MAX SWL: N/A

- ALLOCATION OF GEAR: N/A

09 – DIMENSIONS HATCHES:

| 1 | 16.0  x  12.8 |
|---|---------------|
| 2 | 18.1  x  12.8 |
| 3 | 18.7  x  12.8 |
| 4 | 11.9  x  12.8 |
| 5 | 18.7  x  12.8 |
| 6 | 18.7  x  12.8 |
| 7 | 18.7  x  12.8 |

- DIMENSIONS TANKTOP:

- STENGTH ON TANKTOP, MAIN DECK, HATCH COVERS RESPECTIVELY

ADDITIONAL CLAUSES TO M.V.' SUN HARVEST" CHARTER PARTY
DATED 15TH JUNE 2006

10 - AUSTRALIAN HOLDS LADDERS FITTED; YES

11 - MAX HEIGHT FM TANKTOP TO TOP OF HATCHCOVER: SEE CAPA PLAN

- RAISED LASHINGPOINTS ON TANKTOP : NO

12 - LAST SIX CARGOES WITH LP/DP/CHTRS

|     | L.PORT | D.PORT | CARGOS |
|-----|--------|--------|--------|
| V52 | GOA | TIANJIN | I. ORE |
| V51 | LONGKOU | MINA SAQA | C. CLINKER |
| V50 | PARADIP+HALDIA | TIANJIN | I. ORE |
| V49 | CASABLANCA | PARADIP | PHOSPHATE |
| V48 | RIZHAO | VALENCIA | C. CLINKER |
| V47 | VANCOUVER | DALIAN+SHANGHAI | GRAIN |

13 - WHERE VESSEL PRESENTLY IS AND LATEST BALANCE CARGO ONBOARD

FULL ITIN INCL ETA/B/D WITH CARGO TO BE DISCHARGE AT EACH PORT UPTO DELIVERY. RVTG.

- PORT AGENTS AT LAST PORT PRIOR DELIVERY WITH TEL/TLX/FAX

14 - CLASSIFICATION SOCIETY: NK

- FULL CLASS NOTATION: MNS

15 - CHANGE OF CLASS LAST 24 MONTHS : NO

- IF YES SPECIFY

16 - LAST SPECIAL SURVEY (WHEN/WHERE): 2006.2.19 QINGDAO

- LAST DRYDOCKING (WHEN/WHERE):Jan. 2005

- NEXT SURVEY/DRY-DOCKING PLANNED (WHEN/WHERE): JAN. 2007

17 - WHEN/WHERE OF LAST PORT STATE CONTROL INSPECTION: RVTG.

- ANY OUTSTANDING RECOMMENDATION OR CONDITIONS FROM

CLASSIFICATION SOCIETY OR PORT STATE CONTROL: NO

- IF YES SPECIFY

18 - ANY GA/SERIOUS CGO DMG/SERIOUS REPAIRS IN LAST 2 YEARS AND HAS VESSEL BE ARRESTED IN

THE PREVIOUS 24 MONTHS, IF SO GIVE DETAILS AND CONFIRM VESSEL IS FREE OF ANY/ALL

ENCUMBERANCES NO

19 - NAME OF PNI CLUB: SKULD

- VALIDITY DATE COVER: 21 FEB. 2007

20 - PNI COVERAGE INCLUDES COVERAGE FOR CARGO DAMAGES/LOSS? YES

- NAME OF H+M INSURERS N H+M INS VALUE: PICC USD 5million

21 - CHANGE OF PNI AND/OR H+M INSURERS LAST 24 MONTHS? NO

- IF YES SPECIFY

22 - NATIONALITY OF MASTER/CREW AND NAME OF MASTER, NUMBER OF CREW

Master: Xian Zaijiang, all crew Chinese

23 - MASTER AND KEY OFFICERS SPEAKS/READ ENGLISH: YES

24 - ITF FITTED: YES

- ITF AGREEMENT NUMBER: RVTG.

25 - IS VESSEL/OWNER ISO CERTIFIED: YES

- IF YES WHEN/WHERE RVTG.

- DO VESSEL A/O OWRS CARRY AN ACCREDITED ISM CERT AND NAME OF AUDITORS CCS

- VESSEL'S IMO NUMBER: 8103951

*ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

---

26 - VESSEL FIT FOR PANAMA/SUEZ CANAL TRANSIT AND DATE OF VESSEL'S LAST TRANSIT OF PANAMA/SUEZ CANAL RESP

   **Last transit of Panama: 16th Oct. 2004**

   **Last transit of Suez: 16th Sep. 2005**

27 - DATE/PORT OF VESSEL'S LAST GRAIN LOADING WITH DISCHARGING PORT

   **24th May 2005 Vancouver loading grain; 11th July 2005 Shanghai discharging**

   - DATE/PORT OF VSLS LAST CALL IN AUSTRALIA AND LAST GRAIN LOADING IN AUSTRALIA RVTG.

28 - GRADE OF IFO/MDO THAT VSL BURNS: IFO180CST / MGO

   - IN PORT CONSUMPTION WHEN WORKING/IDLE: 2.2MT MGO

   - IFO/MDO BUNKER RECEIVING CAPACITY (RATE/HR)

   - IFO/MDO TANK CAPACITY:

   **Fuel tank capacity: 3609.6m³**

   **Diesel tank capacity: 308.5m³**

29 - NUMBER AND CAPACITY OF DEBALLSTING PUMP (RATE/HR): RVTG.

30 - VESSEL'S DWAT AT FOLLOWING DRAFT AND ITS CORRESPONDING TPC

   PANAMA CANAL DWAT (12.04 M TFW)

   30/31/32/33/34/37/38/40/43.5 FT FW,

   9.5/10/10.5/11 M FW

   37/38/39/40 FT BW (1.025)

   39/40 FT SW, 11.8/12.5 SW

| Draft(m) | D.W.T(mt) | TPC(mt) |
|----------|-----------|---------|
| 13.5 | 69511 | 65.7 |
| 13.0 | 66231 | 65.4 |
| 12.5 | 62967 | 65.1 |
| 12.0 | 59720 | 64.7 |
| 11.5 | 56493 | 64.3 |
| 11.0 | 53286 | 63.9 |
| 10.5 | 50102 | 63.5 |
| 10.0 | 46937 | 63.0 |
| 9.5 | 43792 | 62.6 |
| 9.0 | 40663 | 62.3 |
| 8.5 | 37551 | 62.0 |
| 8.0 | 34452 | 61.7 |
| 7.5 | 31366 | 61.5 |
| 7.0 | 28292 | 61.3 |
| 6.5 | 25228 | 61.0 |
| 6.0 | 22177 | 60.8 |
| 5.0 | 16109 | 60.3 |
| 4.0 | 10096 | 59.7 |
| 3.0 | 4159 | 58.9 |

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST '  CHARTER PARTY*
*DATED 15TH JUNE 2006*

| 2.5 | 1230 | 58.2 |
| --- | --- | --- |

31 - OWNERS AGREE THAT CHARTERES NOMINATED REP IS FREE TO

   BOARD THE VESSEL AT ANY TIME TO VERIFY THE REPLIES TO THE ABOVE QUESTIONS AND WILL

   ALWAYS HAVE ACCESS TO INSPECT THE CONDITION OF THE CARGO ON BOARD.

32 - DISPONENT/TC OWNER:

   - PIC:

   - TEL:

   - FAX:

   - TLX:

33 - VESSEL OWNERS/MANGERS: QINGDAO HUIQUAN SHIPPING CO.

   - PIC: **Mr. He Weiping**

   - TEL: **86-532-82897137**

   - TLX:

   - FAX: **86-532-82897186**

34 - VESSEL'S TECH MANAGER:

   - PIC: **Mr. Wu Guisheng**

   - TEL: **86-532-82897160**

   - FAX:**86-532-82897165**

   - TLX:

35 - REGISTERED OWNER: **QINGNING MARITIME S.A.**

   - PIC:

   - TLX:

   - TEL:

   - FAX:

36 - BAREBOAT CHARTERER, IF ANY

   - PIC:

   - TLX:

   - TEL:

   - FAX:

37 - REGULAR BUNKER SUPPLIER

   - TLX:

   - TEL:

   - FAX:

38 VALIDITY PERIODS OF THE FOLLOWING CERTIFICATES:

   A.) SAFETY CERTIFICATES: EQUIPMENT: **12th Jan. 2007**

                       CONSTRUCTION: **12th Jan. 2010**

                       RADIO: **7th Dec. 2006**

                       GEAR: **N/A**

   B.) HULL & MACHINERY CERTIFICATES: **RVTG.**

   C.) INTERNATIONAL LOADLINE CERTIFICATES: **12th Jan. 2010**

   D.) DERAT. CERTIFICATES: **RVTG.**

   E.) OPA/COFR CERTIFICATES: **1st July 2008**

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

OWNERS WARRANT THAT THE VESSEL WILL THROUGHOUT THE CURRENCY OF THIS CHARTER MAINTAIN THE CHARTER PARTY SPEED/CONSUMPTION DESCRIPTION. IN CASE OF ANY CONSISTENT DISCREPANCY BETWEEN VESSELS LOGS AND WNI OCEAN ROUTES REPORT THE LATTER SHALL BE TAKEN AS BINDING.

CLAUSE 40    DELIVERY CARGO WITHOUT PRODUCTS BILL(S) OF LADING

IF ORIGINAL BILL(S) OF LADING ARE NOT AVAILABLE AT DISCHARGE PORT THEN CARGO TO BE RELEASED/DISCHARGED AGAINST CHARTERERS SINGLE LETTER OF INDEMNITY WHICH TO BE IN ACCORDANCE WITH OWNERS' P & I CLUB WORDING.

STANDARD FORM OF UNDERTAKING TO BE GIVEN BY CHARTERERS IN RETURN FOR DELIVERING CARGO WITHOUT PRODUCTION OF THE BILL(S) OF LADING

TO OWNER OF M.Y.' SUN HARVEST'

THE ABOVE GOODS WERE SHIPPED ON THE ABOVE VESSEL BY MESSRS............BUT THE RELEVANT BILL(S) OF LADING HAVE NOT YET ARRIVED.

WE HEREBY REQUEST YOU TO DELIVER SUCH GOODS AS DIRECTED BY OUR AGENTS WITHOUT PRODUCTION OF THE BILL(S) OF LADING.

IN CONSIDERATION OF YOUR COMPLYING WITH OUR REQUEST, WE HEREBY AGREE AS FOLLOWS.

1.  TO INDEMNIFY YOU, YOUR SERVANTS AND AGENTS AND TO HOLD ALL OF YOU HARMLESS IN RESPECT OF ANY LIABILITY LOSS OR DAMAGE OF WHATSOEVER NATURE WHICH YOU MAY SUSTAIN BY REASON OF DELIVERING THE GOODS AS DIRECTED BY OUR AGENTS IN ACCORDANCE WITH OUR REQUEST.

2.  IN THE EVENT OF ANY PROCEEDING BEING COMMENCED AGAINST YOU OR ANY OF YOUR SERVANTS OR AGENTS IN CONNECTION WITH THE DELIVERY OF THE GOODS AS AFORESAID TO PROVIDE YOU OR THEM FROM TIME TO TIME WITH SUFFICIENT FUNDS TO DEFEND THE SAME.

3.  IF THE VESSEL OR ANY OTHER VESSEL OR PROPERTY BELONGING TO YOU SHOULD BE ARRESTED OR DETAINED OR IF THE ARREST OR DETENTION THEREOF SHOULD BE THREATENED, TO PROVIDE SUCH BAIL OR OTHER SECURITY AS MAY BE REQUIRED TO PREVENT SUCH ARREST OR DETENTION OR TO SECURE THE RELEASE OF SUCH VESSEL OR PROPERTY AND TO INDEMNIFY YOU IN RESPECT OF ANY LOSE, DAMAGE OR EXPENSES CAUSED BY SUCH ARREST OR DETENTION WHETHER OR NOT THE SAME MAY BE JUSTIFIED.

4.  AS SOON AS ALL ORIGINAL BILL(S) OF LADING FOR THE ABOVE GOODS SHALL HAVE ARRIVED AND/OR COME INTO OUR POSSESSION, TO PRODUCE AND DELIVER THE SAME TO YOU WHEREUPON OUR LIABILITY HEREUNDER SHALL CEASE.

5.  THE LIABILITY OF EACH AND EVERY PERSON UNDER THIS INDEMNITY SHALL BE JOINT AND SEVERAL AND SHALL NOT BE CONDITIONAL UPON YOUR PROCEEDING FIRST AGAINST ANY PERSON, WHETHER OR NOT SUCH PERSON IS PARTY OR LIABLE UNDER THIS INDEMNITY.

6.  THIS INDEMNITY SHALL BE CONSTRUCTED IN ACCORDANCE WITH ENGLISH LAW AND EACH AND EVERY PERSON LIABLE UNDER THIS INDEMNITY SHALL AT YOUR REQUEST SUBMIT TO THE

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

---

JURISDICTION OF THE HIGH COURT OF JUSTICE OF ENGLAND.

YOUR FAITHFULLY,

FOR AND ON BEHALF OF

PLACE AND DATE.............................        .......................................
                                                 (AUTHORIZED SIGNATURE)

CLAUSE 41    DEVIATION
SHOULD THE VESSEL DEVIATE OR BE PUT INTO ANY PORT OTHER THAN THOSE INSTRUCTED BY THE
CHARTERERS BY REASON OF ACCIDENT OR BREAKDOWN OR FOR THE PURPOSE OF LANDING ANY
INJURED OR SICK OFFICER, INCLUDING THE MASTER OR MEMBERS OF THE CREW, THE PORT
CHARGES, PILOTAGE, BUNKER CONSUMPTION AND OTHER EXPENSES, INCLUDING LOSS OF TIME,
SHALL BE BORNE BY OWNERS, AND SHOULD THE VESSEL PUT BACK WHILST ON VOYAGE BY ANY OF
THE ABOVE MENTIONED REASONS, THE HIRE SHALL BE SUSPENDED FROM TIME OF HER PUTTING
BACK UNTIL SHE IS AGAIN IN THE SAME OR EQUIDISTANT POSITION AND HER VOYAGE RESUMED
THEREFROM.

CLAUSE 42    THIS FIXTURE TO BE KEPT ABSOLUTELY PRIVATE AND CONFIDENTIAL.

CLAUSE 43    FUMIGATION
OWNERS TO SUPPLY ON DELIVERY, AND TO MAINTAIN DURING THE SERVICE, VALID DERATIZATION
OR DERATIZATION EXEMPTION CERTIFICATE, THE COST OF ANY FUMIGATION NECESSARY TO OBTAIN
EXTENSIONS OR RENEWALS OF DERATIZATION CERTIFICATE TO BE FOR OWNERS' ACCOUNT AND
TIME REQUIRED TO BE OFF-HIRE. FUMIGATION OF CARGO TO BE IN ACCORDANCE WITH FLAG STATE
REGULATION IMO RECOMMENDATIONS.

CLAUSE 44    GANGWAY
WHERE VESSEL'S ACCOMMODATION LADDER CANNOT BE USED DUE TO PARTICULAR BERTH
CONSTRUCTION, SHORE GANGWAY RENTAL SHALL BE FOR CHARTERERS' ACCOUNT.
WHERE SHORE GANGWAY IS NECESSARY DUE TO VESSEL'S ACCOMMODATION LADDER BEING OUT
OF ORDER, RENTAL SHALL BE FOR OWNERS' ACCOUNT.

CLAUSE 45    GRAB DISCHARGE
VESSEL IS GUARANTEED SUITABLE FOR GRAB DISCHARGE AND BULLDOZERS WORK IN HOLDS.

CLAUSE 46    HIRE AND PAYMENT

HIRE PAYABLE EVERY 15 DAYS IN ADVANCE, FIRST 15 DAYS HIRE PLUS BUNKER OF DELIVERY VALUE
TO BE PAID WITHIN TWO (2) BANKING DAYS AFTER VESSEL DELIVERY.

HIRE PAYABLE BY SWIFT TRANSFER TO:

CLAUSE 47    INTERMEDIATE HOLD CLEANING CLAUSE
VESSEL'S CREW TO ASSIST IN CLEANING HOLDS BETWEEN VOYAGES WHENEVER POSSIBLE AND TO
DO SO AT THEIR BEST. CHARTERERS TO PROVIDE FRESH WATER AS PER MASTER'S REQUIREMENT

ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

REASONABLY, BUT SUCH CLEANING ALWAYS SUBJECT TO DURATION OF BALLAST VOYAGE/ WEATHER CONDITIONS AND OWNERS NOT TB RESPONSIBLE FOR PASSING OF SUBSEQUENT HOLD SURVEYS. CHARTERERS TO PAY OWNERS/MASTER USD3,500.00 FOR EACH CLEANING.

IN LIEU OF HOLD CLEANING ON REDELIVER USD   LUMPSUM ON ANY CARGOES.

CLAUSE 48    ICE
ANY ICE-BOUND PLACE OR ANY PLACE OR ANY PLACE WHERE LIGHTS, LIGHTSHIPS, MARKS AND BUOYS ARE OR ARE LIKELY TO BE WITHDRAWN BY REASON OF ICE ON THE VESSEL'S ARRIVAL OR WHERE THERE IS RISK THAT ORDINARILY THE VESSEL WILL NOT BE ABLE ON ACCOUNT OF ICE TO REACH THE PLACE OR TO GET OUT AFTER HAVING COMPLETED LOADING OR DISCHARGING, THE VESSEL NOT TO BE OBLIGED TO FORCE ICE, IF ON ACCOUNT OF ICE THE MASTER CONSIDERS IT DANGEROUS TO REMAIN AT THE LADING OR DISCHARGING PLACE FOR FEAR OF THE VESSEL BEING FROZEN IN AND/OR DAMAGED, HE HAS LIBERTY TO SAIL TO A CONVENIENT OPEN PLACE AND WAIT THE CHARTERERS' FRESH INSTRUCTIONS.

UNFORESEEN DETENTION THROUGH ANY OF ABOVE CAUSES TO BE FOR CHARTERERS' ACCOUNT.

CLAUSE 49    INSURANCE
CHARTERERS TO HAVE THE BENEFIT OF ANY RETURN OF INSURANCE PREMIUM RECEIVABLE BY THE OWNERS FROM UNDERWRITERS (AS AND WHEN RECEIVED FROM UNDERWRITERS) BY REASON OF VESSEL BEING IN PORT FOR A MINIMUM OF 30 DAYS PROVIDED VESSEL IS ON-HIRE.

OWNERS TO MAINTAIN FULL P AND I COVER INCLUDING POLLUTION COVER WITH SKULD. CHARTERERS HAVE THE BENEFIT OF OWNERS' ENTRY WITH THEIR P & I CLUB, AS FAR AS THE RULES OF THE ASSOCIATION PERMIT.

BASIC WAR RISK PREMIUM DURING THE CHARTER PARTY WILL BE FOR OWNERS' ACCOUNT, ANY ADDITIONAL AND INCREASED WAR RISK PREMIUM TO BE FOR CHARTERERS' ACCOUNT AGAINST UNDERWRITER QUOTES/INVOICE WHICH SHOULD NOT EXCEED LONDON LLOYD SCALE.

CLAUSE 50    ITINERARY
CHARTERERS UNDERTAKE TO KEEP OWNERS FULLY INFORMED DURING THE PERIOD OF THE CHARTER AS REGARDS THE ITINERARY OF THE VESSEL AND THE NAMES AND FULL STYLES OF THEIR AGENTS AT PORTS OF CALL WHENEVER SO REQUIRED BY OWNERS.

CLAUSE 51    OFF-HIRE
SHOULD THE VESSEL BE OFF-HIRE CHARTERERS HAVE THE OPTION OF EXTENDING THE CHARTER PARTY BY AN EQUIVALENT NUMBER OF DAYS DECLARABLE MINIMUM 20 (TWENTY) DAYS PRIOR THE EARLIEST DATE OF REDELIVERY AND SHOULD THE VESSEL BE SUBSEQUENTLY OFF-HIRE CHARTERERS TO DECLARE THEIR OPTION UPON VESSEL RE-ENTERING SERVICE.
IF THE VESSEL IS OFF-HIRE FOR MORE THAN 30 (THIRTY) CONSECUTIVE DAYS, CHARTERERS TO HAVE THE RIGHT OF CANCELING THE REMAINING PERIOD OF THIS CHARTER PARTY.

CLAUSE 52    ON-HIRE AND OFF-HIRE SURVEYS
JOINT ON-HIRE AND OFF-HIRE SURVEY SHALL BE HELD BY AN INDEPENDENT SURVEYOR, COST OF SAME TO BE SHARED 50/50 BETWEEN OWNERS AND CHARTERERS. TIME OF ON-HIRE SURVEY TO BE FOR OWNERS' ACCOUNT, UNLESS VESSEL IS WORKING, AND TIME OF OFF-HIRE SURVEY TO BE FOR

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY*
*DATED 15ᵀᴴ JUNE 2006*

CHARTERERS' ACCOUNT. ON-HIRE SURVEY HELD AT DELIVERY PORT OR 1ST LOADING PORT AND OFF-HIRE SURVEY TO BE HELD AT LAST DISCHARGING PORT.

CLAUSE 53   OPENING/CLOSING OF HATCHES

ALL HATCH OPENING AND CLOSING TO BE DONE BY VESSEL'S CREW FOR OWNERS' ACCOUNT UNLESS PORT REGULATION PROHIBIT SAME, IN WHICH CASE SHORE LABOUR TO BE FOR CHARTERERS' ACCOUNT

VESSEL'S HATCH COVERS ARE AND REMAIN DURING THE CURRENCY OF THIS CHARTER PARTY IN PROPER CONDITION AND IN WATERTIGHT, OTHERWISE ANY TIME LOSS AND/OR EXPENSES INCURRED IN THE EVENT OF WORKERS AT ANY TIME REFUSING TO HANDLE THE VESSEL DUE TO INADEQUACY OF HATCH COVERS TO BE FOR OWNERS' ACCOUNT.

CLAUSE 54   POLLUTION REGULATIONS

OWNERS WARRANT THAT DURING THE CURRENCY OF THIS CHARTER PARTY THE OWNERS TO COMPLY FULLY WITH THE U.S. FEDERAL WATER POLLUTION CONTROL ACT, ANY RULES AND/OR REGULATIONS ISSUED THEREUNDER AND AMENDMENTS THERETO AND ANY LEGISLATION ENACTED WITH RESPECT TO POLLUTION OF SEA WATERS BY OIL OR ANY OTHER SUBSTANCES (INCLUDING ANY RULES AND/OR REGULATIONS ISSUED THEREUNDER) BY ANY GOVERNMENT, DEPARTMENT THEREOF OR OTHER AUTHORITIES AND ALSO ANY SIMILAR LEGISLATION ENFORCED BY ANY NATIONS OF THE WORLD. SHOULD ANY DELAY OR DETENTION OF THE VESSEL OCCUR FROM FAILURE BY OWNERS TO COMPLY WITH THE SAID ACT, LAW RULES, REGULATIONS OR LEGISLATION, THE HIRE SHALL CEASE FOR THE PERIOD OF SUCH DELAY OR DETENTION, OWNERS HEREBY ACCEPT RESPONSIBILITY FOR AND AGREE TO INDEMNITY CHARTERERS AGAINST ALL CLAIMS, LIABILITIES, COSTS (INCLUDING LEGAL FEES) AND ALL CONSEQUENCES WHICH RESULT FROM FAILURE BY OWNERS TO COMPLY WITH THE SAID ACT, RULES, REGULATIONS OR LEGISLATION.

IT IS UNDERSTOOD THAT OWNERS WILL NOT BE CONSIDERED TO BE IN DEFAULT OF ANY OF THE PROVISION OF THIS CLAUSE WHERE THEY ARE NOT ABLE TO PRODUCE CERTIFICATES OF FINANCIAL RESPONSIBILITY IN RESPECT OF OIL POLLUTION LEGISLATION WHICH ARE NOT OBTAINABLE FROM THE INTERNATIONAL GROUP OF P&I CLUB UNDER STANDARD CONDITIONS OF COVER.

CERTIFICATE OF FINANCIAL RESPONSIBILITY FOR OIL POLLUTION TO BE ON BOARD THROUGHOUT THE CHARTERERS' PERIOD.

CLAUSE 55   REDELIVERY

SEE CLAUSE 4 LINE 55-56.

CLAUSE 56   DRYDOCKING CLAUSE.

OWNERS INTEND TO DRY-DOCK THE VESSEL IN THE PEOPLE'S REPUBLIC OF CHINA BETWEEN JANUARY - MARCH, 2007 FOR A PERIOD OF ABOUT 20 DAYS (BUT WITHOUT GUARANTEE), FOR WHICH CHARTERERS TO BRING THE VESSEL TO TAIWAN/PHILIPPINES/VIETNAM/P.R. CHINA/ S.KOREA/JAPAN RANGE, PORT IN CHARTERERS OPTION AT ANY TIME DAY AND NIGHT SUNDAYS AND HOLIDAYS INCLUDED, BUT THE VESSEL SHOULD BE DEPARTED LAST LOADING PORT FM ATLANTIC TO FAR EAST ALWAYS NOT LATE THAN 10 FEBRUARY 2007, THE VESSEL DELIVER TO OWNERS FOR DRYDOCK PURPOSE IN ACCORDANCE WITH OWNERS' NOTICE WHICH TO BE GIVEN LATEST 3 MONTHS BEFORE THE SCHEDULED PERIOD WHICH TO BE ARRANGED BY OWNERS FOR DRYDOCKING. VESSEL

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

---

TO BE PLACED OFF-HIRE UPON DROPPING LAST OUTWARD SEA PILOT ONE SAFE PORT TAIWAN/PHILIPPINES/VIETNAM/P.R. CHINA/S. KOREA/JAPAN RANGE WITH 30 DAYS PRE-NOTICE FM CHARTERERS AND SUFFICIENT FUEL OIL ON BOARD. ALL FUEL USED BY THE VESSEL WHILE OFF-HIRE SHALL BE FOR OWNERS' ACCOUNT. VESSEL SHALL BE PUT BACK ON HIRE AT DROPPING LAST OUTWARD SEA PILOT ONE SAFE PORT WHERE DRYDOCK CARRY OUT OR IN CHARTERERS' OPTION AT A POSITION OR EQUIVALENT DISTANCE FROM LAST DISCHARGING PORT TO THE CHARTERERS' NEXT DESTINATION WITH OWNERS' GIVING 10/5/3/2/1 DAYS NOTICE TO CHARTERERS. CHARTERERS HAVE OPTION TO ADD ANY OFF HIRE PERIOD INTO C/P PERIOD.

CLAUSE 57    REQUISITIONING

SHOULD THE VESSEL BE REQUISITIONED BY THE GOVERNMENT OF THE VESSEL'S FLAG DURING THE PERIOD OF THE CHARTER, THE VESSEL SHALL BE DEEMED TO BE OFF-HIRE DURING THE PERIOD OF SUCH REQUISITION, AND ANY HIRE PAID BY THE SAID GOVERNMENT IN RESPECT OF SUCH REQUISITION PERIOD SHALL BE RETAINED BY OWNERS, THE PERIOD DURING WHICH THE VESSEL IS ON REQUISITION TO THE SAID GOVERNMENT SHALL COUNT AS PART OF THE PERIOD PROVIDED FOR IN THIS CHARTER.

CLAUSE 58    SIGNING BILL(S) OF LADING

CHARTERERS AND/OR THEIR AGENTS ARE AUTHORIZED TO SIGN BILL(S) OF LADING ON OWNERS'/ MASTER'S BEHALF IN ACCORDANCE WITH MATE'S AND/OR TALLY CLERK'S RECEIPTS. CHARTERER'S SHALL REMAIN RESPONSIBLE AND INDEMNIFY OWNERS AGAINST ALL CONSEQUENCES OR LIABILITIES WHICH MAY ARISE FROM ANY INCONSISTENCY BETWEEN THIS CHARTER AND ANY BILL(S) OF LADING ISSUED HEREUNDER, ALSO FROM CHARTERERS OR THEIR AGENTS SIGNING BILL(S) OF LADING WHICH ARE NOT IN CONFORMITY WITH MATE'S AND/OR TALLY CLERK'S RECEIPTS.

CLAUSE 59    SMUGGLING

ANY DELAY, EXPENSES OR FINES INCURRED ON ACCOUNT OF SMUGGLING, IF CAUSED BY THE CHARTERERS' SERVANTS, ARE TO BE FOR CHARTERERS' ACCOUNT, IF CAUSED BY THE OFFICERS AND CREW TO BE FOR THE ACCOUNT OF OWNERS.

CLAUSE 60    STEVEDORE DAMAGES

ANY DAMAGE CAUSED BY STEVEDORES DURING THE CURRENCY OF THIS CHARTER SHALL BE NOTIFIED BY CAPTAIN TO RESPONSIBLE STEVEDORES AND CHARTERERS OR THEIR AGENTS, IN WRITING WITHIN 24 HOURS OF THE OCCURRENCE BUT LATEST ON DEPARTURE FROM THE PORT IN QUESTION, EXCEPT FOR HIDDEN DAMAGES WHICH TO BE REPORTED AS SOON AS FOUND BUT NOT LATER THAN DEPARTURE FROM DISCHARGE PORT. THE CAPTAIN SHALL USE HIS BEST EFFORTS TO OBTAIN WRITTEN ACKNOWLEDGMENT BY RESPONSIBLE PARTIES CAUSING DAMAGE UNLESS DAMAGE SHOULD HAVE BEEN MADE GOOD IN THE MEANTIME. ANY VESSEL'S DELAY OR TIME LOST INCURRED THEREOF DUE TO CHARTERERS' ORDER TO BE FOR CHARTERERS' ACCOUNT.

STEVEDORE DAMAGES AFFECTING SEAWORTHINESS OR THE PROPER WORKING OF VESSEL AND/OR HER EQUIPMENT, SHALL BE REPAIRED WITHOUT DELAY TO THE VESSEL AFTER EACH OCCURRENCE IN CHARTERERS' TIME AND SHALL BE PAID FOR BY THE CHARTERERS OTHER MINOR REPAIRS SHALL BE DONE AT THE SAME TIME, BUT IF THIS IS NOT POSSIBLE, SAME SHALL BE REPAIRED WHILE VESSEL IS IN DRY-DOCK IN OWNERS' TIME PROVIDED THIS DOES NOT INTERFERE WITH OWNERS' REPAIR WORK, OR BY VESSEL'S CREW AT OWNERS' CONVINCE, ALL COSTS OF SUCH REPAIRS SHALL BE FOR CHARTERERS' ACCOUNT. ANY TIME IN REPAIRING STEVEDORES DAMAGE WHICH CANNOT BE REPAIRED DURING OWNERS' DRY DOCK TIME, SHALL BE FOR CHARTERERS' ACCOUNT.

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST ' CHARTER PARTY
DATED 15TH JUNE 2006

CLAUSE 61    MOBILE CRANE CLAUSE

MOBILE CRANE ON BOARD TO BE ALLOWED, BUT MAX TWO SHIPMENTS DURING THIS CHARTER PERIOD AGAINST OWNERS' MOBILE CRANE PROTECTIVE CLAUSE:

"CHARTERERS UNDERTAKE TO TRY BEST NOT TO USE MOBILE CRANE(S) FOR DISCHARGING OF CARGO. HOWEVER, IN CASE OF NECESSITY, CHARTERERS HAVE LIBERTY TO PLACE MOBILE CRANES ON DECK PROVIDED ALL COSTS, RISKS AND TIME TO BE FOR CHARTERERS' ACCOUNT AND PROVIDED THE TOTAL WEIGHT OF SUCH CRANES INCLUDING WEIGHT OF GRABS AND CARGO IS NOT MORE THAN VESSEL'S DECK STRENGTH, CHARTERERS TO PROVIDE VESSEL WITH SUFFICIENT DUNNAGE AS MAY BE REQUIRED BY THE MASTER WHICH TO BE PLACED UNDERNEATH THE CRANES TO SPREAD BOTH STATIC WEIGHT AND DYNAMIC WEIGHT AND IN ANY CASE THE STATIC WEIGHT AND DYNAMIC WEIGHT ARE NOT TO EXCEED PERMISSIBLE WEIGHT PER SQUARE METER ON DECK OF VESSEL.

CHARTERERS UNDERTAKE TO TRY BEST NOT TO CUT OR WELD ON VESSEL'S HATCHES SHOULD ANY CUTTING OR WELDING OR REINFORCEMENT BE NECESSARY ON VESSEL'S HATCHES TO ACCOMMODATE THE PLACEMENT OF SUCH CRANES THEN ALL EXPENSES, RISK AND TIME OF SUCH WORKS TO BE FOR CHARTERERS ACCOUNT AND SUCH WORKS ALWAYS TO BE CARRIED OUT SUBJECT TO CLASSIFICATION SOCIETY SURVEYORS APPROVAL/SATISFACTION. ANY ALTERNATION TO THE VESSEL TO BE OF A PERMANENT NATURE, CHARTERERS WILL BE FULLY RESPONSIBLE FOR ANY AND ALL DAMAGE, RISKS, TIME, EXPENSES AND COSTS (INCLUDING BUT NOT LIMITED TO ALL BURN AREAS OF PAINT OF DECK AND UNDERNEATH WHICH ARE TO BE RECONDITIONED TO THE ORIGINAL STATE), AND THAT ALL OPERATION TO BE UNDER MASTER/OFFICER'S SUPERVISION AND UP TO THE MASTER AND CLASSIFICATION SOCIETY'S SATISFACTION.

CLAUSE 62    TOP-OFF AND LIGHTENING OPERATIONS

CHARTERERS SHALL HAVE THE RIGHT TO TOP-OFF OR LIGHTEN THE VESSEL USING OTHER VESSELS OR CRAFT AT ANY SAFE DOCK, WHARF OR ANCHORAGE WITHIN PORT LIMITS. SUCH OPERATION TO BE CARRIED OUT ALWAYS UNDER THE SUPERVISION OF THE MASTER REGARDING GENERAL SAFETY, WHO MAY AT ANY TIME ORDER THE OTHER VESSEL OR CRAFT AWAY OR REMOVE HIS OWN VESSEL, CHARTERERS TO TAKE NORMAL CUSTOMARY PRECAUTIONS FOR SUCH OPERATIONS, INCLUDING ADEQUATE FENDERING TRADING OPERATIONS WHICH ENTAIL CARGO LADING OR DISCHARGING OUTSIDE PORT LIMITS TO BE CONSIDERED ONLY IF SUFFICIENT NOTICE HAS BEEN TO AND APPROVAL OBTAINED FROM OWNERS, RESPECTIVELY HULL UNDERWRITERS.

CHARTERERS TO INDEMNITY OWNERS FOR ANY DAMAGES TO VESSEL, LOSS OF HIRE, EXTRA INSURANCE PREMIUMS AND DEDUCTIBLES RESULTING FROM SUCH OPERATIONS.

CLAUSE 63    TRADING EXCLUSION

TRADING WORLDWIDE BETWEEN SAFE ANCHORAGE(S) SAFE BERTH(S) SAFE PORT(S) AND PLACES, ALWAYS SAFELY AFLOAT, ALWAYS ACCESSIBLE, ALWAYS WITHIN I.W.L., ALWAYS WITHIN WAR RISK TRADING WARRANTIES AND EXCLUDING WAR AND WARLIKE ZONES WHICH DECLARED BY OWNERS' WAR RISK UNDERWRITERS FROM TIME TO TIME AND COUNTRIES WHICH TIME TO TIME MAY BE EXCLUDED BY GOVERNING AUTHORITY OF THE VESSEL'S FLAG, AND EXCLUDING ARABIAN GULF (INCLUDING THE GULF OF OMAN), KUWAIT, IRAN, NICARIGUA, HONDURAS, LIBYA (INCLUDING GULF OF SIDRA/SIRTE), FORMER YUGOSLAVIA, FEDERAL REPUBLIC OF SERBIA AND MONTENEGRO, EITREA, NORTH KOREA, ALBANIA, GREAT LAKES, NAMIBIA, IRAQ, CAMBODIA, CIS/RUSSIAN PACIFIC PORTS, ISRAEL OR ISRAEL CONTROLLED COUNTRIES/AREAS, LEBANON, ERITREA, SYRIA, ANGOLA (INCLUDING CABINDA), NIGERIA, SOMALIA, CONGO, DEMOCRATIC REPUBLIC OF FORMERLY ZAIRE,

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

YEMEN(NORTH & SOUTH), SRI LANKA, LIBERIA (INCLUDING ABKHAZIA), BOSNIA-HERZEGOVINA, SIERRA LEONE, CUBA, CROATIAN PORTS SOUTH OF 42°53'48"N AND EAST OF 0173°36'E, HAITI, SALVADORE, CYPRUS, ORINOCO RIVER.

NAABSA FOR ARGENTINA AND BRAZIL ONLY.

NO DIRECT SAILING BETWEEN P.R. CHINA AND TAIWAN OR VICE VERSA.

FOR GULF OF AQABA ARABIAN GULF (INCLUDING THE GULF OF OMAN), IRAN TRADING: CHARTERERS OPTION TO TRADE THESE AREAS SUBJECT TO ADDITIONAL INSURANCE PREMIUM WHICH TO BE CHARGED BY OWNERS WAR RISK UNDERWRITERS, AND ANY BLOCKING/TRAPPING/DETENTION INSURANCE TO BE ENTIRELY FOR CHARTERERS' ACCOUNT CALLING THE AFORESAID AREAS.

ST LAWRENCE RIVER BETWEEN 1ST NOV AND 1ST MAY TO BE EXCLUDED.
ALASKA IS ALLOWED TO TRADE DURING 16TH APRIL TO 15TH OCT.

CHARTERERS HAVE THE OPTION TO CALL FINLAND ALWAYS WITHIN IWL SUBJECT TO OWNERS PRIOR APPROVAL WHICH NOT TO BE UNREASONABLY WITHHELD. EVEN THOUGH CHARTERERS HAVE THE OPTION TO BREAK IWL THIS DOES NOT APPLY TO FINLAND.

FOR SCANDINAVIAN/ST LAWRENCE RIVER/ALASKA/BLACK SEA TRADING:
ALWAYS PROVIDED ARE SAFE AND OPEN TO NAVIGATE FOR NON-ICE STRENGTHEN VESSEL OF SIMILAR SIZE AND DIMENSIONS. IN ANY EVENT VESSEL SHALL NOT BE OBLIGED TO FORCE ICE OR FOLLOW ICE-BREAKERS. MASTER HAS ABSOLUTE DISCRETION TO REFUSE TO PROCEED IF HE CONSIDERS IT DANGEROUS AND/OR TO SAIL TO A CONVENIENT OPEN PLACE IF HE CONSIDERS IT DANGEROUS TO REMAIN AT ANY LOADING OR DISCHARGING OR WAITING PLACE FOR FEAR OF THE VESSEL BEING BLOCKED/FROZEN IN , TO AWAIT CHARTERERS FRESH INSTRUCTIONS. UNFORESEEN DETENTION OR DEVIATION THROUGH THE ABOVE TO BE FOR CHARTERERS' ACCOUNT. ANY EXTRA AND/OR ADDITIONAL INSURANCE PREMIUM CHARGED BY OWNERS, AND ANY BLOCKING/TRAPPING/ DETENTION INSURANCE TO BE FOR CHARTERERS' ACCOUNT.

CHARTERERS OPTION TO BREAK I.W.L. AGAINST PAYING EXTRA INSURANCE AS PER THE ORIGINAL VOUCHES PROVIDED BY OWNERS H&M INSURERS BUT NOT TO FORCE ICE OR FOLLOW ICE-BREAKERS, BUT SAME TO BE SUBJECT TO OWNERS' PRIOR APPROVAL.

CLAUSE 64    WAR CANCELLATION
IN THE EVENT OF THE OUTBREAK OF WAR (WHETHER THERE BE A DECLARATION OF WAR OR NOT) BETWEEN ANY TWO OR MORE OF THE FOLLOWING COUNTRIES; THE UNITED STATES OF AMERICA, THE UNITED KINGDOM, FRANCE, THE FORMER UNION OF SOVIET SOCIALIST REPUBLICS, THE PEOPLE'S REPUBLIC OF CHINA, SWITZERLAND, ITALY OR IN THE EVENT OF THE NATION UNDER WHOSE FLAG THE VESSEL SAILS BECOMING INVOLVED IN WAR (WEATHER THERE BE A DECLARATION OF WAR OR NOT), EITHER THE OWNERS OR THE CHARTERERS MAY CANCEL THIS CHARTER, WHEREUPON THE CHARTERERS SHALL REDELIVER THE VESSEL TO THE OWNERS IN ACCORDANCE WITH CLAUSE 4 IF SHE HAS CARGO ON BOARD, AFTER DISCHARGE THEREOF AT DESTINATION, OR, IF DEBARRED UNDER THIS CLAUSE FROM REACHING OR ENTERING IT, AT A NEAR OPEN AND SAFE PORT AS DIRECTED BY THE OWNERS IF SHE HAS NO CARGO ON BOARD, AT THE PORT AT WHICH SHE THEN IS, OR, IF AT SEA, AT A NEAR, OPEN AND SAFE PORT AS DIRECTED BY THE OWNERS. IN ALL CASES HIRE SHALL CONTINUE TO BE PAID IN ACCORDANCE WITH CLAUSE 4 AND

*ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

EXCEPT AS AFORESAID ALL OTHER PROVISIONS OF THE CHARTER SHALL APPLY UNTIL REDELIVERY.

CLAUSE 65    ASIAN GYPSY MOTH CLAUSES TO BE APPLIED
OWNERS CONFIRM THAT THE VESSEL HAS NOT CALLED AT RUSSIAN FAR EAST PORTS RANGING FROM POSYET TO OLGO BAY, INCLUDING VLADIVOSTOCK, NAKHODKA, AND VOSTOCHNIY, DURING THE MONTHS OF JUNE THROUGH SEPTEMBER AND THAT THERE IS NO DANGER OF THE VESSEL BEING REJECTED ENTRY AND/OR BEING DELAYED BY THE U.S. AUTHORITIES. IN THIS CASE, HOWEVER, DOES OCCUR CHARTERERS HAVE THE RIGHT TO INSTRUCT THE VESSEL TO CLEAR AND PRESENT WITH ALL TIME/EXPENSES TILL THE VESSEL IS ACCEPTED BEING FOR OWNERS' ACCOUNT.

OWNERS WARRANT THE VESSEL HAS NOT TRADED ISRAEL AND IS NOT BLACKLISTED BY ARAB COUNTRIES. OWNERS CONFIRM VESSEL HAS NEVER CALLED C.I.S. PACIFIC PORTS AND FREE FROM ASIAN GYPSY MOTHS, FAILING WHICH ALL CONSEQUENCES/TIME TO BE FOR OWNERS' ACCOUNT.

CLAUSE 66    WATCHMEN
WATCHMEN HIRED FROM SHORE FOR CARGO TO BE FOR CHARTERERS' ACCOUNT, FOR VESSEL TO BE FOR OWNERS' ACCOUNT PROVIDED SPECIFICALLY ORDERED BY MASTER. COMPULSORY WATCHMEN TO BE FOR CHARTERERS' ACCOUNT.

CLAUSE 67
CHARTERERS TO ENSURE THE VESSEL TO BE LEFT IN SEAWORTHY TRIM FOR SHIFTING BETWEEN BERTHS AND/OR PORTS TO MASTER'S SATISFACTION.

CLAUSE 68
MASTER/VESSEL HAS LIBERTY TO BURN MGO FOR MAIN ENGINE WHEN MANEUVERING IN SHALLOW/NARROW WATERS, TRANSITING CANAL/RIVERS AND IN/OUT PORTS.

CLAUSE 69.
ANY TAXES LEVIED ON CARGO OR SUB-FREIGHT EXCEPT OWNERS INCOME TAXES TO BE FOR CHARTERERS' ACCOUNT.

CLAUSE 70.
CHARTERERS MAY SUPPLY OCEAN ROUTES TO ADVISE THE MASTER DURING VOYAGES SPECIFIED AND PAID BY CHARTERERS AGAINST WNI OCEAN ROUTES REPORT. THE MASTER TO COMPLY WITH THE REPORTING PROCEDURE OF THE ROUTING SERVICE BUT IT IS UNDERSTOOD THAT FINAL ROUTING IS ALWAYS AT MASTER'S DISCRETION. MASTER TO DO BEST TO CO-OPERATE WITH CHARTERERS. OCEAN ROUTES CALCULATION ON SPEED/CONSUMPTION IS TREATED AS FINAL AND BINDING.

WEATHER REPORTS TO BE TAKEN FROM THE VESSEL'S DECK LOG AND FROM OCEAN ROUTES WEATHER REPORT. IN THE EVENT OF CONSISTENT DISCREPANCIES BETWEEN THE TWO SOURCES, OCEAN ROUTES REPORTS TO BE TAKEN INTO CONSIDERATION FOR THE PURPOSE OF DETERMINING THE WEATHER ENCOUNTERED.

CLAUSE 71.
IN THE EVENT OF CHARTERERS ORDERING THE VESSEL TO SAFE PORT(S)/BERTH(S)/ANCHORAGE(S) WHERE THE VESSEL'S STAY/LAY-UP IS EXTENDED FOR MORE THAN 30 CONSECUTIVE DAYS OR THE STAY/LAY-UP HAS CAUSED BOTTOM FOULING , CHARTERERS TO PROVIDE UNDERWATER CLEANING

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

AT THEIR TIME AND EXPENSES. OTHERWISE OWNERS' REPRESENTATION OF THE VESSEL'S SPEED AND CONSUMPTION TO BE NULL AND VOID, EFFECTIVE FROM THE VESSEL'S DEPARTURE FROM SUCH PORT(S)/BERTH(S)/ANCHORAGE(S).

CLAUSE 72   BIMCO STANDARD YEAR 2000 CLAUSE

YEAR 2000 CONFORMITY SHALL MEAN THAT NEITHER PERFORMANCE NOR FUNCTIONALITY OF COMPUTER SYSTEMS, ELECTRONIC AND ELECTOR-MECHANICAL OR SIMILAR EQUIPMENT WILL BE AFFECTED BY DATES PRIOR TO OR DURING THE YEAR 2000 WITHOUT PREJUDICE TO THEIR OTHER RIGHTS, OBLIGATIONS AND DEFENSES UNDER THIS CHARTER PARTY INCLUDING, WHERE APPLICABLE, THOSE OF THE HAGUE OR HAGUE-VISBY RULES. THE OWNERS AND THE CHARTERERS, AND IN PARTICULARS THE OWNERS IN RESPECT OF THE VESSEL, SHALL EXERCISE DUE DILIGENCE IN ENSURING YEAR 2000 CONFORMITY IN SO FAR AS THIS HAS A BEARING ON THE PERFORMANCE OF THIS CHARTER PARTY.

CLAUSE 73   BIMCO ISPS CLAUSE

(I) FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE RELATING TO THE VESSEL AND "THE COMPANY". UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) TO THE CHARTERERS. THE OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER (CSO).

(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE OWNERS OR "THE COMPANY" TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNERS' ACCOUNT.

(J) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY OFFICER (SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THIS CHARTER PARTY, SHALL ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE CSO AND THE SSO/MASTER. FURTHERMORE, THE CHARTERERS SHALL ENSURE THAT ALL SUB-CHARTER PARTIES THEY ENTER INTO DURING THE PERIOD OF THIS CHARTER PARTY CONTAIN THE FOLLOWING PROVISION:

"THE CHARTERERS SHALL PROVIDE THE OWNERS WITH THEIR FULL STYLE CONTACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THE CHARTER PARTY, SHALL ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE OWNERS".

(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE CHARTERERS TO

COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS' ACCOUNT.

NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY ALL DELAY, COSTS OR EXPENSES WHATSOEVER ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, TUG ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR THE CHARTERERS' ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS' NEGLIGENCE. ALL MEASURES REQUIRED BY THE OWNERS TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR THE OWNERS' ACCOUNT.

IF EITHER PARTY MAKES ANY PAYMENT, WHICH IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

CLAUSE 74    BIMCO STANDARD ISM CLAUSE

FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM) CODE IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTERPARTY, THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISM CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE. UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF COMPLIANCE (DOC) AND SAFETY MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS.

EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTERPARTY, LOSS, DAMAGE, EXPENSE OR DELAY CAUSED BY FAILURE ON THE PART OF THE OWNERS OR "THE COMPANY" TO COMPLY WITH THE ISM CODE SHALL BE FOR THE OWNERS' ACCOUNT."

CLAUSE 75    BUNKER FUEL SULPHUR CONTENT CLAUSE

(A) WITHOUT PREJUDICE TO ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, THE CHARTERERS SHALL SUPPLY FUELS OF SUCH SPECIFICATIONS AND GRADES TO PERMIT THE VESSEL, AT ALL TIMES, TO COMPLY WITH THE MAXIMUM SULPHUR CONTENT REQUIREMENTS OF ANY EMISSION CONTROL ZONE WHEN THE VESSEL IS ORDERED TO TRADE WITHIN THAT ZONE.

THE CHARTERERS ALSO WARRANT THAT ANY BUNKER SUPPLIERS, BUNKER CRAFT OPERATORS AND BUNKER SURVEYORS USED BY THE CHARTERERS TO SUPPLY SUCH FUELS SHALL COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI, INCLUDING THE GUIDELINES IN RESPECT OF SAMPLING AND THE PROVISION OF BUNKER DELIVERY NOTES.

THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE CHARTERERS' FAILURE TO COMPLY WITH THIS SUB-CLAUSE (A).

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

(B) PROVIDED ALWAYS THAT THE CHARTERERS HAVE FULFILLED THEIR OBLIGATIONS IN RESPECT OF THE SUPPLY OF FUELS IN ACCORDANCE WITH SUB-CLAUSE (A), THE OWNERS WARRANT THAT:

(I) THE VESSEL SHALL COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI AND WITH THE REQUIREMENTS OF ANY EMISSION CONTROL ZONE; AND

(II) THE VESSEL SHALL BE ABLE TO CONSUME FUELS OF THE REQUIRED SULPHUR CONTENT WHEN ORDERED BY THE CHARTERERS TO TRADE WITHIN ANY SUCH ZONE.

SUBJECT TO HAVING SUPPLIED THE VESSEL WITH FUELS IN ACCORDANCE WITH SUB-CLAUSE (A), THE CHARTERERS SHALL NOT OTHERWISE BE LIABLE FOR ANY LOSS, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE VESSEL'S FAILURE TO COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI.

(C) FOR THE PURPOSE OF THIS CLAUSE, "EMISSION CONTROL ZONE" SHALL MEAN ZONES AS STIPULATED IN MARPOL ANNEX VI AND/OR ZONES REGULATED BY REGIONAL AND/OR NATIONAL AUTHORITIES SUCH AS, BUT NOT LIMITED TO, THE EU AND THE US ENVIRONMENTAL PROTECTION AGENCY.

CLAUSE 76    BUNKER QUALITY CONTROL CLAUSE

(1) THE CHARTERERS SHALL SUPPLY BUNKERS OF A QUALITY SUITABLE FOR BURNING IN THE VESSEL'S ENGINES AND AUXILIARIES AND WHICH CONFORM TO THE SPECIFICATION(S) MUTUALLY AGREED UNDER THIS CHARTER.

(2) AT THE TIME OF DELIVERY OF THE VESSEL, THE OWNERS SHALL PLACE AT THE DISPOSAL OF THE CHARTERERS, THE BUNKER DELIVERY NOTE(S) AND ANY SAMPLES RELATING TO THE FUELS EXISTING ON BOARD.

(3) DURING THE CURRENCY OF THE CHARTER, THE CHARTERERS SHALL ENSURE THAT BUNKER DELIVERY NOTES ARE PRESENTED TO THE VESSEL ON THE DELIVERY OF FUEL(S) AND THAT DURING BUNKERING REPRESENTATIVE SAMPLES OF THE FUEL(S) SUPPLIED SHALL BE TAKEN AT THE VESSEL'S BUNKERING MANIFOLD AND SEALED IN THE PRESENCE OF COMPETENT REPRESENTATIVES OF THE CHARTERERS AND THE VESSEL.

(4) THE FUEL SAMPLES SHALL BE RETAINED BY THE VESSEL FOR 90 (NINETY) DAYS AFTER THE DATE OF DELIVERY OR FOR WHATEVER PERIOD NECESSARY IN THE CASE OF A PRIOR DISPUTE AND ANY DISPUTE AS TO WHETHER THE BUNKER FUELS CONFORM TO THE AGREED SPECIFICATION(S) SHALL BE SETTLED BY ANALYSIS OF THE SAMPLE(S) BY (...) OR BY ANOTHER MUTUALLY AGREED FUELS ANALYST WHOSE FINDINGS SHALL BE CONCLUSIVE EVIDENCE AS TO CONFORMITY OR OTHERWISE WITH THE BUNKER FUELS SPECIFICATION(S).

(5) THE OWNERS RESERVE THEIR RIGHT TO MAKE A CLAIM AGAINST THE CHARTERERS FOR ANY DAMAGE TO THE MAIN ENGINES OR THE AUXILIARIES CAUSED BY THE USE OF UNSUITABLE FUELS OR

*ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST'' CHARTER PARTY*
*DATED 15TH JUNE 2006*

FUELS NOT COMPLYING WITH THE AGREED SPECIFICATION(S). ADDITIONALLY, IF BUNKER FUELS SUPPLIED DO NOT CONFORM WITH THE MUTUALLY AGREED SPECIFICATION(S) OR OTHERWISE PROVE UNSUITABLE FOR BURNING IN THE SHIP'S ENGINES OR AUXILIARIES THE OWNERS SHALL NOT BE HELD RESPONSIBLE FOR ANY REDUCTION IN THE VESSEL'S SPEED PERFORMANCE AND/OR INCREASED BUNKER CONSUMPTION NOR FOR ANY TIME LOST AND ANY OTHER CONSEQUENCES.

CLAUSE 77    U.S. CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE

(A) IF THE VESSEL LOADS OR CARRIES CARGO DESTINED FOR THE US OR PASSING THROUGH US PORTS IN TRANSIT, THE CHARTERERS SHALL COMPLY WITH THE CURRENT US CUSTOMS REGULATIONS (19 CFR 4.7) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE:

I) HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE);
II) HAVE IN PLACE AN ICB (INTERNATIONAL CARRIER BOND);
III) PROVIDE THE OWNERS WITH A TIMELY CONFIRMATION OF I) AND II) ABOVE; AND
IV) SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM) TO THE US CUSTOMS AND PROVIDE THE OWNERS AT THE SAME TIME WITH A COPY THEREOF.

(B) THE CHARTERERS ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, THE VESSEL SHALL REMAIN ON HIRE.

(C) IF THE CHARTERERS' ICB IS USED TO MEET ANY PENALTIES, DUTIES, TAXES OR OTHER CHARGES WHICH ARE SOLELY THE RESPONSIBILITY OF THE OWNERS, THE OWNERS SHALL PROMPTLY REIMBURSE THE CHARTERERS FOR THOSE AMOUNTS.

(D) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE CHARTERERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS (19 CFR 4.7) SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING, OTHER CONTRACT, LAW OR REGULATION.

***** END *****
## BOTH-TO-BLAME COLLISION CLAUSE

IF THE LIABILITY FOR ANY COLLISION IN WHICH THE VESSEL IS INVOLVED WHILE PERFORMING THIS CHARTER PARTY FAILS TO BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE UNITED STATES OF AMERICA, THE FOLLOWING CLAUSE SHALL APPLY:

## BOTH TO BLAME COLLISION CLAUSE

ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

IF THE SHIP COMES INTO COLLISION WITH ANOTHER SHIP AS A RESULT OF THE NEGLIGENCE OF THE OTHER SHIP AND ANY ACT, NEGLECT OR DEFAULT OF THE MASTER, MARINER, PILOT, OR THE SERVANTS OF THE CARRIER IN THE NAVIGATION OR IN THE MANAGEMENT OF THE SHIP, THE OWNERS OF THE GOODS CARRIED HEREUNDER WILL INDEMNIFY THE CARRIER AGAINST ALL LOSS OR LIABILITY TO THE OTHER OR NON-CARRYING SHIP OR HER OWNERS IN SO FAR AS SUCH LOSS OR LIABILITY REPRESENTS LOSS OF, OR DAMAGE TO, OR ANY CLAIM WHATSOEVER OF THE OWNERS OF THE SAID GOODS, PAID OR PAYABLE BY THE OTHER OR NON-CARRYING SHIP OR HER OWNERS TO THE OWNERS OF SAID GOODS AND SET-OFF, RECOUPED OR RECOVERED BY THE OTHER OR NON-CARRYING SHIP HER OWNERS AS PART OF THEIR CLAIM AGAINST THE CARRYING SHIP OR CARRIER.

THE FOREGOING PROVISIONS SHALL ALSO APPLY WHERE THE OWNERS, OPERATORS OR THOSE IN CHARGE OF ANY SHIP OR SHIPS OR OBJECTS OTHER THAN, OR IN ADDITION TO, THE COLLIDING SHIPS OR OBJECTS ARE AT FAULT IN RESPECT TO A COLLISION OR CONTACT.

## GENERAL AVERAGE AND THE NEW JASON CLAUSE

GENERAL AVERAGE SHALL BE PAYABLE ACCORDING TO THE YORK/ANTWERP RULES; 1974, BUT WHERE THE ADJUSTMENT IS MADE IN ACCORDANCE WITH THE LAW AND PRACTICE OF THE UNITED STATES OF AMERICA, THE FOLLOWING CLAUSE SHALL APPLY.

### NEW JASON CLAUSE

IN THE EVENT OF ACCIDENT, DANGER, DAMAGE OR DISASTER, BEFORE OR AFTER THE COMMENCEMENT OF THE VOYAGE, RESULTING FROM ANY CAUSE WHATSOEVER, WHETHER DUE TO NEGLIGENCE OR NOT, FOR WHICH OR FOR THE CONSEQUENCES OF WHICH, THE CARRIER IS NOT RESPONSIBLE, BY STATUTE, CONTRACT OR OTHERWISE, THE GOODS, SHIPPERS, CONSIGNEES OR OWNERS OF THE GOODS, SHALL CONTRIBUTE WITH THE CARRIER IN GENERAL AVERAGE TO THE PAYMENT OF ANY SACRIFICES, LOSSES OR EXPENSES OF A GENERAL AVERAGE NATURE THAT MAY BE MADE OR INCURRED AND SHALL PAY SALVAGE AND SPECIAL CHARGES INCURRED IN RESPECT OF THE GOODS.

IF A SALVING SHIP IS OWNED OR OPERATED BY THE CARRIER, SALVAGE SHALL BE PAID FOR AS FULLY AS IF SUCH SALVING SHIP OR SHIPS BELONGED TO STRANGERS. SUCH DEPOSIT AS THE CARRIER OR HIS AGENTS MAY DEEM SUFFICIENT TO COVER THE ESTIMATED CONTRIBUTION OF THE GOODS AND ANY SALVAGE AND SPECIAL CHARGES THEREON SHALL, IF REQUIRED BE MADE BY THE GOODS, SHIPPERS, CONSIGNEES OR OWNERS OF THE GOODS TO THE CARRIER BEFORE DELIVERY.
AND THE CHARTERERS SHALL PROCURE THAT ALL BILL(S) OF LADING ISSUED UNDER THIS CHARTER PARTY SHALL CONTAIN THE SAME CLAUSE.

## GENERAL CLAUSE PARAMOUNT

IT IS HEREBY MUTUALLY AGREED THAT ALL BILL(S) OF LADING ISSUED PURSUANT TO THIS CHARTER PARTY SHALL BEAR THE FOLLOWING CLAUSE:
ALL TERMS, PROVISIONS AND CONDITIONS OF THE RULES CONTAINED IN THE INTERNATIONAL CONVENTION OF CERTAIN RULES RELATING TO BILL(S) OF LADING DATED BRUSSELS, THE 25TH AUGUST, 1924 (COMMONLY KNOWN AS THE HAGUE RULES) SHALL APPLY TO THE CONTRACT IN THIS

BILL(S) OF LADING, BUT IF IN THE COUNTRY OF SHIPMENT OF DELIVERY OF THE CARGO A SPECIAL LAW HAS BEEN ENACTED IN ORDER TO INCORPORATE THE RULES OF THE SAID CONVENTION, THEN ALL THE TERMS, PROVISION AND CONDITIONS OF THE SAID CONVENTION WITH AND SUBJECT TO SUCH MODIFICATIONS AND ADDITIONS, IF ANY, AS ARE IMPOSED BY SUCH SPECIAL LAW SHALL APPLY. NOTHING HERE IN CONTAINED SHALL BE DEEMED TO BE A SURRENDER BY THE CARRIER OF ANY OF HIS TIGHTS RESPONSIBILITIES UNDER THE SAID RULES OR ENACTMENTS.

THE CARRIER IS TO BE ENTITLED TO THE BENEFIT OF ALL SUCH PRIVILEGES, RIGHTS AND IMMUNITIES AS ARE CONTAINED IN THE SAID RULES OR ENACTMENTS AS IF THE SAME WERE HEREIN SPECIFICALLY SET OUT AND IF ANYTHING HEREIN CONTAINED BE INCONSISTENT WITH THE SAID RULES OR ENACTMENTS IT SHALL TO THE EXTENT OF SUCH INCONSISTENCY AND NO FURTHER BE NULL AND VOID.

## CONWARTIME 1993

1. FOR THE PURPOSE OF THIS CLAUSE, THE WORDS:
   (A)" OWNERS" SHALL INCLUDE THE SHIPOWNERS, BAREBOAT CHARTERERS, DISPONENT OWNERS, MANGERS OR OTHER OPERATORS WHO ARE CHARGED WITH THE MANAGEMENT OF THE VESSEL, AND THE MASTER AND

   (B) WAR RISKS" SHALL INCLUDE ANY WAR (WHETHER ACTUAL OR THREATENED), ACT OF WAR, CIVIL WAR HOSTILITIES, REVOLUTION, REBELLION, CIVIL COMMOTION, WARLIKE OPERATIONS, THE LAYING OF MINES (WHETHER ACTUAL OR REPORTED), ACTS OF PIRACY, ACTS OF TERRORISTS, ACTS OF HOSTILITY OR MALICIOUS DAMAGE, BLOCKADES (WHETHER IMPOSED AGAINST ALL VESSELS OR IMPOSED SELECTIVELY AGAINST VESSELS OF CERTAIN FLAGS OR OWNERSHIP, OR AGAINST CERTAIN CARGOES OR CREWS OR OTHERWISE HOWSOEVER), BY ANY PERSON, BODY, TERRORIST OR POLITICAL GROUP, OR THE GOVERNMENT OF ANY STATE WHATSOEVER, WHICH, IN THE REASONABLE JUDGMENT OF THE MASTER AND/OR THE OWNERS, MAY BE DANGEROUS OR ARE LIKELY TO BE OR TO BECOME DANGEROUS TO THE VESSEL, HER CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL.

2. THE VESSEL, UNLESS THE WRITTEN CONSENT OF THE OWNERS TO BE FIRST OBTAINED, SHALL NOT BE ORDERED TO OR REQUIRED TO CONTINUE TO OR THROUGH, ANY PORT, PLACE, AREA OR ZONE (WHETHER OF LAND OR SEA), OR ANY WATERWAY OR CANAL, WHERE IT APPEARS THAT THE VESSEL, HER CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL, IN THE REASONABLE JUDGMENT OF THE MASTER AND/OR THE OWNERS, ANY BE OR ARE LIKELY TO BE, EXPOSED TO WAR RISKS. SHOULD THE VESSEL BE WITHIN ANY SUCH PLACE AS AFORESAID, WHICH ONLY BECOMES DANGEROUS, OR IS LIKELY TO BE OR TO BECOME DANGEROUS, AFTER HER ENTRY INTO IT, SHE SHALL BE AT LIBERTY TO LEAVE IT.

3. THE VESSEL SHALL NOT BE REQUIRED TO LOAD CONTRABAND CARGO, OR TO PASS THROUGH ANY BLOCKADE, WHETHER SUCH BLOCKADE BE IMPOSED SELECTIVELY IN ANY WAY WHATSOEVER AGAINST VESSELS OF CERTAIN FLAGS OR OWNERSHIP, OR AGAINST CERTAIN CARGOES OR CREW OR OTHERWISE HOWSOEVER, OR TO PROCEED TO AN AREA WHERE SHE SHALL BE SUBJECT, OR IS LIKELY TO BE SUBJECT TO A BELLIGERENT RIGHT OF SEARCH AND/OR CONFISCATION.

4. (A) THE OWNERS MAY EFFECT WAR RISKS INSURANCE IN RESPECT OF THE FULL AND MACHINERY OF THE VESSEL AND THEIR OTHER INTERESTS (INCLUDING, BUT NOT LIMITED TO, LOSS OF

ADDITIONAL CLAUSES TO M.V. ' SUN HARVEST' CHARTER PARTY
DATED 15TH JUNE 2006

EARNINGS AND DETENTION, THE CREW AND THEIR PROTECTION AND INDEMNITY RISKS), AND THE
PREMIUMS AND/OR CALLS THEREFOR SHALL BE FOR THEIR ACCOUNT.

(B)  IF THE UNDERWRITERS OF SUCH INSURANCE SHOULD REQUIRE PAYMENT OF PREMIUMS
AND/OR CALLS BECAUSE, PURSUANT TO THE CHARTERERS' ORDERS, THE VESSEL IS WITHIN, OR
IS DUE TO ENTER AND REMAIN WITHIN, ANY AREA OR AREAS WHICH ARE SPECIFIED BY SUCH
UNDERWRITERS AS BEING SUBJECT TO ADDITIONAL PREMIUMS BECAUSE OF WAR RISKS, THEN
SUCH PREMIUMS AND/OR CALLS SHALL BE REIMBURSED BY THE CHARTERERS TO THE OWNERS
AT THE SAME TIME AS THE NEXT PAYMENT OF HIRE IS DUE.

5.  IF THE OWNERS BECOME LIABLE UNDER THE TERMS OF EMPLOYMENT TO PAY TO THE CREW ANY
BONUS OR ADDITIONAL WAGES IN RESPECT OF SAILING INTO AN AREA WHICH IS DANGEROUS IN
THE MANNER DEFINE BY THE SAID TERMS, THEN SUCH BONUS OR ADDITIONAL WAGES SHALL BE
REIMBURSED TO THE OWNERS BY THE CHARTERERS AT THE SAME TIME AS THE NEXT PAYMENT OF
HIRE IS DUE.

6.  THE VESSEL SHALL HAVE LIBERTY
    (A)  TO COMPLY WITH ALL ORDERS, DIRECTIONS, RECOMMENDATIONS OR ADVICE AS TO
    DEPARTURE, ARRIVAL, ROUTES, SAILING IN CONVOY, PORTS OF CALL, STOPPAGES,
    DESTINATIONS, DISCHARGE OF CARGO, DELIVERY, OR IN ANY OTHER WAY WHATSOEVER,
    WHICH ARE GIVEN BY THE GOVERNMENT OF THE NATION UNDER WHOSE FLAG THE VESSEL
    SAILS, OR OTHER GOVERNMENT TO WHOSE LAWS THE OWNERS ARE SUBJECT OR ANY OTHER
    GOVERNMENT, BODY OR GROUP WHATSOEVER ACTING WITH THE POWER TO COMPEL
    COMPLIANCE WITH THEIR ORDERS OR DIRECTION:

    (B)  TO COMPLY WITH THE ORDER, DIRECTIONS OR RECOMMENDATIONS OF ANY WAR RISKS
    UNDERWRITERS WHO HAVE THE AUTHORITY TO GIVE THE SAME UNDER THE TERMS OR THE
    WAR RISKS INSURANCE.

    (C)  TO COMPLY WITH THE TERMS OF ANY RESOLUTION OF THE SECURITY COUNCIL OF THE
    UNITED NATIONS, ANY DIRECTIVES OF THE EUROPEAN COMMUNITY, THE EFFECTIVE ORDERS
    OF ANY OTHER SUPRANATIONAL BODY WHICH HAS THE RIGHT TO ISSUE AND GIVE THE SAME,
    AND WITH NATIONAL LAWS AIMED AT ENFORCING THE SAME TO WHICH THE OWNERS ARE
    SUBJECT AND TO OBEY THE ORDERS AND DIRECTIONS OF THOSE WHO ARE CHARGED WITH
    THEIR ENFORCEMENT.

    (D)  TO DIVERT AND DISCHARGE AT ANY OTHER PORT ANY CARGO OR PART THEREOF WHICH MAY
    RENDER THE VESSEL LIABLE TO CONFISCATION AS A CONTRABAND CARRIER,

    (E)  TO DIVERT AND CALL AT ANY OTHER PORT TO CHANGE THE CREW OR ANY PART THEREOF OR
    OTHER PERSONS ON BOARD THE VESSEL WHEN THERE IS REASON TO BELIEVE THAT THEY
    MAY BE SUBJECT TO INTERNMENT IMPRISONMENT OR OTHER SANCTIONS.

7.  IF IN ACCORDANCE WITH THEIR RIGHTS UNDER THE FOREGOING PROVISIONS OF THIS CLAUSE, THE
OWNERS SHALL REFUSE TO PROCEED TO THE LOADING OR DISCHARGING PORTS, OR ANY ONE OR
MORE OF THEM, THEY SHALL IMMEDIATELY INFORM THE CHARTERERS, NO CARGO SHALL BE
DISCHARGED AT ANY ALTERNATIVE PORT WITHOUT FIRST GIVING THE CHARTERERS NOTICE OF
THE OWNERS' INTENTION TO DO SO AND REQUESTING THEM TO NOMINATE A SAFE PORT FOR

*ADDITIONAL CLAUSES TO M.V.' SUN HARVEST' CHARTER PARTY*
*DATED 15TH JUNE 2006*

SUCH DISCHARGE. FAILING SUCH NOMINATION BY THE CHARTERERS WITHIN 48 HOURS OF THE RECEIPT OF SUCH NOTICE AND REQUEST, THE OWNERS MAY DISCHARGE THE CARGO AT ANY SAFE PORT OF THEIR OWN CHOICE.

8.   IF IN COMPLIANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES (2) TO (7) OF THIS CLAUSE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE DEEMED A DEVIATION, BUT SHALL BE CONSIDERED AS DUE FULFILLMENT OF THIS CHARTER PARTY.

# EXHIBIT 2

Ex – 2

| | |
|---|---|
| **From:** | pacific bulk-sunmin [comm@pacificbulk.com] |
| **Sent:** | Friday, October 09, 2009 6:47 AM |
| **To:** | 'pacific bulk-sunmin' |
| **Subject:** | 轉寄: MV SUN HARVEST---WITHDRAWAL NOTICE |

**Importance:**       High


--- Original Message ---
From: pacific bulk _ yan
To: GREAT WALL - PETER
Cc: peter@gwshipping.cc
Sent: Wednesday, September 30, 2009 7:07 PM
Subject: MV SUN HARVEST---WITHDRAWAL NOTICE

TO:GREAT WALL INTERNATIONAL SHIPPING LTD (BEIJING)
FM:PACIFIC BULK CHARTERING LTD SHENZHEN OFFICE
DD:30TH/SEPT/09
REF:YDH093008

MR.PETER/YAN

RE:MV SUN HARVEST---WITHDRAWAL NOTICE

PLS KINDLY FIND THE UNDERMENTIONED NOTICE FM PACIFIC BULK SHIPPING (CAYMAN) LTD:

QTE
To: RSUSA LLC
C.c. Master of the "SUN HARVEST"

Re: M/V "SUN HARVEST" / Charterparty dated 12 September 2009 ("Charter") / Repudiation by
Charterers and Withdrawal Notice

The Vessel was delivered to Charterers on 12 September 2009.

The 1st instalment of hire together with the value of the bunkers at delivery in the amount of
USD651,411.11 have been due since 15 September 2009 and have remained due and unpaid to date.

There were various assurances and promises from Charterers that the 1st instalment and the bunkers value
would be paid. However, Owners have not received any payment.

On 24TH September 2009, Owners through their brokers received a message from Charterers which
purported to confirm that Charterers had on 22 September 2009 arranged to transfer USD700,000 from their
account with the Banc of America into Owners account with HSBC. Owners did not receive any payment
through such alleged transfer or otherwise. Owners' investigations have revealed that the message
purportedly sent from Banc of America was not a genuine message.

On 24 September 2009, Owners sent the Hire Statement for the 2nd instalment of hire for the amount of
USD183,562.50 to Charterers (through brokers). The 2nd instalment of hire has been due since 25 September
2009. Charterers have failed to pay the 2nd instalment to date. Nor have Charterers responded to Owners
regarding payment of the outstanding hires.

10/13/2009 9:31 AM

On 25 September 2009, Owners' Defence Club, The Swedish Club, sent a further demand for payment of hire. Charterers have not responded to the demand to date.

On 26 September 2009, when Owners' lawyers in the United States called Mr Steven Reynolds of Charterers to enquire the status on payment of hires, Mr Reynolds admitted that the hires had not been paid and did not dispute that the message dated 22 September 2009 purportedly from Banc of America was not a genuine document. He also informed Owners' lawyers that Owners might choose to withdraw the Vessel for non-payment of hire.

Charterers' unwillingness or inability to pay hires, together with their conduct since delivery of the Vessel have clearly demonstrated that they have no intention to be bound by the Charter any further and hence have committed a repudiatory breach of the Charter. Owners hereby accept such repudiatory breach without prejudice to Owners' rights to claim for the unpaid hires and other loss and damage suffered or may suffer as a result of Charterers' repudiation of the Charter. Accordingly, the Charter is terminated on the ground of repudiation by Charterers.

Alternatively, if the conduct of Charterers does not amount to repudiatory breach of the Charter (which Owners deny), Owners hereby withdraw the Vessel from the service of the Charterers, with immediate effect. Owners and the Master will not follow any further instructions from Charterers. Owners' right of withdrawal is pursuant to Clause 5 of the Charter for non-payment of of the 2nd instalment of hire 15 days in advance.

The withdrawal of the Vessel is entirely without prejudice to Owners' rights under the Charter or otherwise.

For the avoidance of doubt, all Owners' rights are hereby expressly reserved and Owners will claim against Charterers for all losses, damage, costs and expenses suffered or incurred as a result of the breach by the Charterers and the withdrawal of the Vessel.

UNQTE

B.RGDS
CAPT.YAN DONGHAI

PACIFIC BULK CHARTERING LTD SHENZHEN OFFICE
AS AGENT FOR PACIFIC BULK SHIPPING (CAYMAN) LTD

TEL:86-755-88821399
FAX:86-755-88821799
EMAIL:OPS@PACIFICBULK.COM
MOB:86-13828769977

# EXHIBIT 3

Ex-3

**Re :    MV SUN HARVEST - CP DD 12 SEPT 2009– DAMAGE STATEMENT**

ON-HIRE : FROM  12-Sep-09 04:00  GMT          TO  30-Sep-09 12:00  GMT                    =  18.33333 DAYS

OFF-HIRE :                                                                                   0. DAY(S)

| | TOTAL OFF-HIRE | | | 0. DAY(S) |
|---|---|---|---|---|

| | | | | USD | USD |
|---|---|---|---|---|---|
| HIRE : | 18.33333DAYS | - OFF-HIRE  0. DAY(S) | | | |
| | = 18.33333 DAYS  X  USD 12,500 /DAY | | = | | 229,166.63 |
| LESS : | 2.50%  ADDCOMM | | | 5,729.17 | |
| | 1.25%  BROKERAGE | | | 2,864.58 | |
| VALUE OF BOD | | | | | |
| | IFO 940.896 MT | X  USD 410. /MT | = | | 385,767.36 |
| | MDO 153.5 MT | X  USD 550. /MT | = | | 84,425.00 |
| VALUE OF BOR WHEN ALTERING THE SHIP'S COURSE | | | | | |
| | IFO 406.6 MT | X  USD 410. /MT | | 166,706.00 | |
| | MDO 120.5 MT | X  USD 550. /MT | | 66,275.00 | |
| PLUS : | C/V/E | USD1500 | 18.33333 DAY(S)  = | | 916.67 |

PLUS :

PLUS :

| | | |
|---|---|---|
| | 241,574.75 | 700,275.66 |
| **BALANCE IN OWNERS' FAVOUR** | 458,700.91 | |
| | 700,275.66 | 700,275.66 |

Please remit to our account as flwg:

| Beneficiary's Bank: | **HSBC, Hong Kong** |
|---|---|
| Bank Address: | G/F 35 Bonham Strand, Sheung Wan, Hong Kong |
| Swift Code: | HSBCHKHHHKH |
| Beneficiary: | Pacific Bulk Maritime Holdings Co., Ltd. |
| Beneficiary's A/C No.: | 459-254389-838 |

# EXHIBIT 4

# RS-USA

**"The Global Project Logistics and Transportation Solution"**

## PEFORMANCE, EXPERIENCE, GLOBAL PARTNERS



Offloading 150 Ton Unit in Houston



Discharging 300 ton reactor



RSUSA, is a unique transportation company. As worldwide cargo brokers and vessel operators, we can provide yo. with the best solutions for your ocean, air or inland transportation needs. We have established relationships with a multitude of first tier carriers and owners across the globe that are eager to develop new business opportunities in these trying economic times. RSUSA's network of carriers have offered us discounted rates based on the overall volume of our worldwide client base. Along with our commitment to keep overhead low in our marketing efforts, we are able to pass those savings on to you. In most cases, we offer rates that are significantly lower than many freight forwarders. RSUSA encourages you to send in your inquiry for your ocean, a/c or inland transportation needs.

We simplify the logistic equation by eliminating multiple subcontractors. We coordinate all of your logistic needs. RSUSA provides you with cost-effective and efficient ocean transportation solutions. Our strength is that we have multiple and experienced first tier carriers. Therefore the core of our strategy is to plan and coordinate with your team, specifically allocating the necessary resources to manage your project the most economic and logical way. Our US and Foreign flag partners have ships varying from 1,000 dwat up to 70,000 dwat. This distinct and diverse ships available have heavy-lifting capabilities from 25 MT up to 1000MT.





Wind Blades for GE WIND to Houston





Loading 120' blades in Santos

Home

RSUSA Loads Iron Ore

Weekly Grain Report

A few project photos

Ships Complete in Iraq

About Us



**RS-USA**

"The Global Project Logistics and Transportation Solution"

Contact us by e-mail, or phone at:

RSUSA, LLC
HOUSTON, TEXAS
Main: 832.425.2223   24/7 Live

Email: chartering@rsusa.org

First Name
Last Name
Company Name
Address Line 1
Address Line 2
City
State
Zip Code
Country
Daytime Phone
Fax
E-mail Address
Comments
Shipping Instructions

Send

Home

RSUSA Loads Iron Ore

Weekly Grain Report

A few project photos

Ships Complete in Iraq

About Us

Project Services

Worldwide Poverty Relief

Standing in the Dock

MV Jondi arrives Iraq

Contact Us

# RS-USA

## "The Global Project Logistics and Transportation Solution"

### RSUSA DISCHARGES 6 VESSELS IN UMM QASR, IRAQ

RSUSA, LLC announces that the M/V Maria, M/V Cher, M/V Nancy, M/V Tatyana, M/V Joudi and the M/V DD Vanguard have arrived in Iraq and completed the discharge of 140,000 metric tons of rice from Thailand and Vietnam. To date RSUSA has lifted 175,000 metric tons of rice on behalf of the Iraq Trade Ministry and the Iraq Grain Board and other charterers. The M/V DD VANGUARD loaded in Ho Chi Minh, Vietnam and completed discharge in March 10, 2009.

RSUSA, LLC is one of the few ship owners to call Umm Qasr, Iraq. Through its valuable contacts within Iraq RSUSA consistently has been the only carrier to discharge without incident and delays.

"Against many odds RSUSA has completed its first 6 vessels and delivered the rice to Iraq," stated Steven Reynolds CEO of RSUSA. "We faced at times insurmountable issues but continued to work through each one and finally have moved on to the most important task of providing much needed food to the Iraqi people. RSUSA is proud to be involved in this most important mission." RSUSA would like to thank all its partners for its loyalty, belief and support during this process.

Home

RSUSA Loads Iron Ore

Weekly Grain Report

A few project photos

Ships Complete in Iraq

About Us

Project Services

Worldwide Poverty Relief

Standing in the Dark

MV Joudi arrives Iraq

RSUSA specializes in the transport of all kinds of machinery, energy related equipment and industrial installations. We have extensive experience in the difficult process of transporting oversized, overweight and time-sensitive cargo to or from the most difficult places in the world. We offer a full portfolio of necessary services including, but not limited to: dismantling, loading, export crating, marking, expediting, chartering, documentation, letter of credit consulting and negotiation, trans-shipments, intermediate storage, unloading, erection and turnkey installation as well as insurance coverage and custom clearances.

### International Project Transportation

Our Project Logistics services are a specialized extension of our global logistics offering. We provide complete services for the entire large-scale, heavy-lift projects, whether relocating a power plant or refinery to Iraq or building a pipeline in the Amazon. RSUSA's teams plan, manage and undertake special logistics projects of any scale from start to finish. However challenging the geography, however complex the lift, RSUSA works closely with our engineering and contractor customers to ensure projects are planned, delivered and completed on time and to exact specifications.

We are one of the premier heavy-lift providers in the world. Our service is an integrated, turnkey transportation project management and forwarding service for large-scale, logistically complex projects.

With our system of single point control, RSUSA handles all your specialized heavy-lift activities from beginning to end, working worldwide with our partners. We offer complete Door-to-Door packages which can include the packing, loading, transportation by various modes (road, rail, water, air) and by a variety of carriers, unloading, unpacking and erection.

RSUSA will select the most suitable sub-contractors for specific areas of work and arrange for necessary supervision and control.
In addition, computer tracking, purchase order follow-up, documentation, insurance and supervision complete the package.

### Ocean Freight

RSUSA offers a complete service of ocean freight transportation. Full containers, in sizes 20', 40' or 45' lengths, as well as Open Top and Flat Rack equipment is offered. We select the most suitable carrier for you, or, where no direct sailings are available, find possibilities to transship under one Through Bill of Lading. For out-of-gauge cargo, such as overweight of oversize equipment, we will find the most suitable carrier and the most direct route for handling these cargoes with greatest care at competitive prices.

### Chartering

Where quantities of cargo permit, and/or where sailings are needed to ports that are not being called on by the liner carriers, we can arrange for suitable charter tonnage. We have access to the world wide fleet of vessels, with or without gear, with first classifications, within any age

limitations, and can thereby have your goods loaded in time at most competitive rates.

### Airfreight

Whether large or small, RSUSA can get your shipment underway. In particular, call us with your airfreight shipments which require the extra attention, such as shipments from one other country to another or shipment involving difficult documentation.

### Rail transport

RSUSA has years of experience in dealing with the railways. Especially for over-dimensional or overweight cargo, which requires special railcars, maybe even special train service, but in any case railway clearance, expert blocking & bracing and constant monitoring during the move.

### Trucking

Call RSUSA for your truck transportation requirements. We have access to numerous North American Carriers who offer a variety of services, including, but not limited to vans, flat bed trailers, step-decks, double-drops, axle combinations up to 19 axles, dual-lane systems, hydraulic multilane trailers. While all are excellent carriers, many are good in same areas only and with our know-how we can get the right carrier for the job.

### Barge service

Where required, RSUSA will charter barges and floating derricks for a wide variety of transportation requirements. These can be hopper barges or deck-barges to facilitate a roll-on / roll-off operation. With the ever increasing size of the equipment to be moved, waterways are often the only way of transport authorities will permit.

### Machinery Specialists

RSUSA is specialized in the shipping of machinery and industrial equipment in the manufacturing and energy sectors.
Understanding our customer's needs for accurate and on-time delivery of their equipment to the destination, despite it's often oversize and overweight character, requires more than the ordinary shipping service. At RSUSA, that is what we know best.

### Dismantling & Erections

With the help of expert rigging and erection companies, RSUSA will not only look after the transportation of your equipment, but also set it onto foundations. Our services include complete dismantling and/or turn-key installations.

### Export Packaging

Tailored to your specific requirements, RSUSA will arrange the export packing of your machinery or equipment, choosing the most economical and safest methods. Skidding, crating, containerization, shrink-wrapping, and rust-protection are just some of the services available.

**Customs clearance**

In particular in combination with complete projects, RSUSA offers customs clearance services throughout North America. A very important factor in this regard is prior determination of correct customs classification and verification of documents prior to clearance.

**Insurance**

Through our large volume of insurance coverage placed on behalf of our customers, and the relative high degree of extraordinary cargoes, RSUSA offers extremely competitive insurance rates. This includes All risk Door to Door Transport Insurance, Coverage for War, Strike, Riot, Civil Commotion, Coverage through to remote locations (i.e. Interior Siberia) and, where required, consequential loss insurance coverage. All our policies are underwritten by major western Insurance companies.

**Consulting**

RSUSA is at your service for any questions our customers may have in respect to transport related matters. Consulting with us in the early stages of planning can often save our customers the frustration when equipment is being built too large, transport budgets are exceeded, or the anticipated schedule did not allow sufficient time for transport.



600,000 lbs
transformer for
Oolagah Lake Dam
Project



Discharging at Tulsa
Port of Catoosa



On the road to
Oolagah



165 tons being
delivered



Mining trucks
delivered to
Peru

165 tons being
delivered

Mining trucks
delivered to
Peru





Heavy haul
equipment in
route

Installing 200
ton refinery
equipment in
the Dominica